# FILED

November 5, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| CHRISTINE SPANN, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | |
| | ) | Davidson Chancery |
| VS. | ) | No. 94-1849-I |
| | ) | |
| | ) | Appeal No. |
| BARRY ABRAHAM, individually, | ) | M1996-00003-COA-R3-CV |
| and d/b/a SIR PIZZA, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

## APPEAL FROM THE CHANCERY COURT
## FOR DAVIDSON COUNTY
## AT NASHVILLE, TENNESSEE

## THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

For the Plaintiff/Appellant:

Kathleen G. Morris
Nashville, Tennessee

Robert J. Turner
Nashville, Tennessee

For the Defendant/Appellee:

C. Eric Stevens
Jeffrey Zager
Trabue, Sturdivant & DeWitt
Nashville, Tennessee

# AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves a pregnancy discrimination claim asserted by an employee of a Nashville pizza restaurant. After refusing to accept a temporary reassignment requested by her employer, the employee quit her job and filed suit, alleging that her employer had discriminated against her in violation of the Tennessee Human Rights Act. The Chancery Court for Davidson County granted the employer's motion for directed verdict at the close of the employee's proof after concluding that she had not made out a prima facie case for disparate treatment because of her pregnancy. The employee asserts on this appeal that the trial court erred by directing a verdict for the employer and by amending its final order on its own motion. We have concluded that the trial court correctly directed a verdict for the employer in this case and, therefore, affirm the trial court.

## I.

In March 1991, Christine Spann, a high school graduate in her late twenties, went to work at a Sir Pizza restaurant in Bellevue owned by Barry Abraham. She started as a daytime delivery driver and a nighttime backup driver. Eventually she became a full-time cook and, in 1992, was promoted to assistant manager of the Bellevue restaurant where she worked directly under the manager, Lisa Abraham, who was Mr. Abraham's daughter.

Ms. Spann's duties as assistant manager included preparation work for the evening shift, dealing with vendors and customers, assigning duties to the daytime delivery drivers, and handling money. Her regular work hours were from 9:00 or 9:30 a.m. to 5:00 p.m., Monday through Friday. After she became assistant manager, Ms. Spann occasionally requested permission to work additional hours as both a cook and delivery driver in order to earn additional income. Mr. Abraham was pleased with Ms. Spann's performance and permitted her to work extra hours when the work was available.

Ms. Spann was single and had no children when she went to work at Sir Pizza. In January or February 1993, she discovered that she was pregnant.[1] When Ms. Spann shared her news with Mr. Abraham and his daughter, she perceived that Ms. Abraham began to act coolly toward her and to treat her more formally. Notwithstanding Ms. Abraham's change in attitude, she still allowed Ms. Spann to swap work schedules and to work at times other than her normal work hours in order to accommodate Ms. Spann's prenatal medical care appointments. On one occasion, Mr. Abraham himself worked an entire day shift in Ms. Spann's absence following a scheduling mix-up between Ms. Spann and Ms. Abraham.

In late May 1993, when Ms. Spann was five months pregnant, Mr. Abraham discussed with Ms. Spann how his small business could best accommodate the later stages of her pregnancy, the birth of her child, and her anticipated maternity leave. Ms. Spann informed Mr. Abraham that she planned to miss as little work as possible and that she intended to return to work shortly after her baby was born. Mr. Abraham suggested a temporary reassignment until she returned from maternity leave. He proposed that Ms. Spann work as the backup night delivery driver - a position she had held before - and that his son temporarily take over her assistant manager position. He assured Ms. Spann that she would be reinstated to her cook/assistant manager position when she returned from maternity leave and that "he would see that [she] would not lose any money during this time." Mr. Abraham also offered to advance Ms. Spann money to pay her automobile insurance while she worked as a delivery driver.

Ms. Spann rejected Mr. Abraham's proposal. When she refused the temporary transfer, Mr. Abraham told Ms. Spann that if she did not accept the temporary reassignment to the backup delivery driver position, he had no other position for her. However, he repeated that she could still have her cook/assistant manager position back after her maternity leave.[2] Ms. Spann refused to change her mind and quit her job at Sir Pizza on May 26, 1993.

On May 24, 1994, Ms. Spann sued Mr. Abraham in the Circuit Court for Davidson County alleging that he had discriminated against her in violation of the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-101, -1004 (1998). The parties later agreed to transfer the case to the Chancery Court for Davidson County pursuant to Tenn. Code Ann. § 16-2-107 (1994) because at that time the chancery court had exclusive subject matter jurisdiction over Ms. Spann's claim.[3] A jury was empaneled to hear the case on July 15, 1996. At the close of Ms. Spann's proof on July 16, 1996, the trial court granted Mr. Abraham's motion for a directed verdict because Ms. Spann had failed to establish a prima facie case that Mr. Abraham had discriminated against her because she was pregnant. The trial court entered an order dismissing Ms. Spann's complaint on July 30, 1996 which the trial court corrected on its own motion on September 30, 1996. Ms. Spann now appeals from the amended final judgment.

## II.

Three procedural issues must be dealt with before considering the dismissal of Ms. Spann's discrimination claim. First, Ms. Spann asserts that the trial court lacked the power to direct a verdict for Mr. Abraham because it earlier denied his motion for summary judgment. Second, she takes issue with the trial court's decision that it did not have jurisdiction to consider her Tenn. R. Civ. P. 59 motion filed after she perfected this appeal. Third, she insists that the trial court erred by correcting the text of its final order on its own motion after it declined to consider her Tenn. R. Civ. P. 59 motion.

## A.

At the close of Ms. Spann's proof on July 16, 1996, Mr. Abraham moved for a directed verdict on the ground that she had failed "to show that she was treated differently than similarly-situated employees" and that "telltale comments" cannot be direct evidence of discrimination. The trial court, after reciting that "one of the

grounds" of the "motion to dismiss" was that Ms. Spann had failed to prove that she had been treated differently from similarly situated employees, stated that it was "of the opinion that the motion to dismiss is meritorious." Accordingly, it directed Mr. Abraham's lawyer to prepare an order of dismissal. However, the trial court did not sign an order prepared by Mr. Abraham's lawyer but rather signed an order prepared by Ms. Spann's lawyer. This order, which was entered on July 30, 1996, recited that the "plaintiff [had] failed to prove that there existed other employees similarly situated to her that were treated more favorably than plaintiff, and that reasonable minds could not differ as to this conclusion."

On August 28, 1996, Ms. Spann filed her notice of appeal from the July 30, 1996 order along with the appeal bond required by Tenn. R. App. P. 6. Thereafter, on August 29, 1996, she filed a Tenn. R. Civ. P. 59.04 motion to alter or amend the judgment arguing that disparate treatment of similarly situated employees was not a necessary element of her proof because she had presented direct evidence of Mr. Abraham's discriminatory intent. Mr. Abraham responded to the motion by asserting that the trial court lacked jurisdiction to consider Ms. Spann's motion and that the motion was substantively without merit. On September 30, 1996, the trial court entered an order denying Ms. Spann's Tenn. R. Civ. P. 59.04 motion on jurisdictional grounds. However, on its own motion pursuant to Tenn. R. Civ. P. 60.01, the trial court "corrected" its July 30, 1996 order to state more broadly that " the plaintiff has failed to carry her burden to establish a prima facie case, either by direct or by circumstantial evidence."

**B.**

Ms. Spann asserts, without citation to authority, that the trial court erred by granting the motion for directed verdict because it had earlier denied the motion for summary judgment. This argument is not well-taken because these two motions required the trial court to review different evidence. In addition, trial courts confronted with a motion for summary judgment must consider the wisdom of

terminating a case before trial and may deny a motion for summary judgment if they entertain any doubt concerning the plaintiff's ability to make out a prima facie case. If, at trial, the plaintiff fails to make out a prima facie case, the trial court may then direct a verdict even though it earlier denied the summary judgment motion. *See Malone v. Microdyne Corp.*, 26 F.3d 471, 475 n.4 (4th Cir. 1994); *Catts Co. v. Gulf Ins. Co.*, 723 F.2d 1494, 1502 (10th Cir. 1983).

## C.

Ms. Spann next asserts that the trial court erred by determining that it did not have jurisdiction to consider her Tenn. R. Civ. P. 59.04 motion, filed one day after she had filed her notice of appeal and appeal bond. We have determined that Ms. Spann's notice of appeal was not premature and that the filing of her notice of appeal and appeal bond had the legal effect of terminating the trial court's authority to act on her later filed Tenn. R. Civ. P. 59.04 motion without leave of the appellate courts.

The procedural posture of this case differs from prior cases involving premature notices of appeal. Several years after the adoption of the Tennessee Rules of Appellate Procedure, we were called upon to pass upon the effectiveness of a notice of appeal filed before the trial court had disposed of a pending post-trial motion filed before the notice of appeal. A Western Section panel , construing Tenn. R. App. P. 4(a) as it read at the time, held that the notice of appeal was " premature" and that parties who did not file another notice of appeal after all pending post-trial motions were resolved were not entitled to an appeal as of right. *See Steele v. Wolfe Sales Co.*, 663 S.W.2d 799, 803 (Tenn. Ct. App. 1983). This decision caused the Tennessee Supreme Court to amend Tenn. R. App. P. 4 in 1984 to state that a prematurely filed notice of appeal would be treated as filed after the entry of a final order disposing of all the claims between all the parties. *See* Tenn. R. App. P. 4(d). Notices of appeal, in circumstances like those in the *Steele* case, were "premature," not because they were filed before the thirtieth day

following the entry of the judgment appealed from, but because they were filed before the trial court had resolved all the claims between all the parties.

Ms. Spann's notice of appeal differs from the premature notice of appeal at issue in the *Steele* case. Here, there were no post-trial motions pending when Ms. Spann filed her notice of appeal. Because the trial court's order itself was final and because there were no post-trial motions pending at the time, Ms. Spann's notice of appeal was not premature. At the time she filed it, the trial court had fully and finally resolved all the claims between all the parties.

Ms. Spann "perfected" her appeal on August 28, 1996, when she filed her notice of appeal and appeal bond. *See Blue Cross Blue Shield of Tenn. v. Eddins*, 516 S.W.2d 76, 77 (Tenn. 1974) (holding that an appeal is perfected when the appeal bond is filed). The legal effect of perfecting an appeal is to divest the trial court of further authority to act without leave of the appellate court and to vest jurisdiction in the court of appeals. *See Suggs v. Suggs' Executors*, 1 Tenn. (1 Overt.) 2, 3 (1794); *Steele v. Wolfe Sales Co.*, 663 S.W.2d at 802. Accordingly, the trial court correctly held that it no longer had jurisdiction to consider Ms. Spann's Tenn. R. Civ. P. 59.04 motion because jurisdiction over the case had vested with the court of appeals on August 29, 1996 when Ms. Spann filed her notice of appeal and appeal bond.

## D.

Finally, Ms. Spann insists that the trial court erred by altering the July 30, 1996 order on its own motion. We need not tarry long with this argument because Tenn. R. Civ. P. 60.01 specifically addresses this circumstance. Tenn. R. Civ. P. 60.01 empowers trial courts, on their own motion, to correct "errors [in judgments] . . . arising from oversight or omissions" anytime "before the appeal is docketed in the appellate court." Accordingly, the only two questions that must be answered are whether the appeal had been docketed in the appellate court when the trial court

entered its September 30, 1996 order and whether the change the trial court made in the July 30, 1996 order was correcting an error arising from an oversight or omission.

In its September 30, 1996 order, the trial court found as a fact it had not been notified that Ms. Spann's appeal had been docketed by the court of appeals. The record contains no evidence to the contrary regarding the status of Ms. Spann's appeal; therefore, we find that the evidence does not preponderate against the trial court's findings regarding the status of the appeal. Accordingly, the trial court had authority to correct its order on its own motion without leave of this court.

The second question is whether the narrow language concerning the basis for the trial court's decision to direct a verdict for Mr. Abraham arose from an oversight or omission. The transcript of the trial permits a conclusion that the trial court was not limiting its decision to grant the directed verdict on a single ground but rather on all the grounds presented in Mr. Abraham's oral motion for a directed verdict. Accordingly, we conclude that the trial court must have overlooked the substance of the order drawn by Ms. Spann's lawyer and that it undertook to correct the narrowness of the order once it was brought to the court's attention. This is a proper exercise of Tenn. R. Civ. P. 60.01 authority. Accordingly, we decline to fault the trial court for correcting the July 30, 1996 order to conform the scope of its wording to the trial court's own understanding of the scope of its earlier decision.

### III.

We now turn to the question of the proper standard of review for the remaining issues on this appeal. This case presents a question of law rather than a question of fact because the trial court directed a verdict for Mr. Abraham. *See Norman v. Southern Ry.*, 119 Tenn. 401, 422, 104 S.W. 1088, 1093-94 (1907). Thus, our task is to review the record to determine whether Ms. Spann's evidence

was sufficient to create an issue for the jury to decide. *See Underwood v. Waterslides of Mid-America, Inc.*, 823 S.W.2d 171, 176 (Tenn. Ct. App. 1991); *Norman v. Liberty Life Assurance Co.*, 556 S.W.2d 772, 773 (Tenn. Ct. App. 1977). In conducting this review, we do not weigh the evidence, *see Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995), or evaluate the credibility of the witnesses. *See Benson v. Tennessee Valley Elec. Coop.*, 868 S.W.2d 630, 638-39 (Tenn. Ct. App. 1993). Rather, we review the evidence most favorably to the party opposing the motion, give that party the benefit of all reasonable inferences from the evidence, and also disregard all evidence contrary to that party's position. *See Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994); *Gann v. International Harvester Co.*, 712 S.W.2d 100, 105 (Tenn. 1986).

Directed verdicts are appropriate only when reasonable minds can reach one conclusion. *See Williams v. Brown*, 860 S.W.2d 854, 857 (Tenn. 1993); *Crosslin v. Alsup*, 594 S.W.2d 379, 380 (Tenn. 1980). A case should go to the jury, even if the facts are undisputed, when reasonable persons could draw conflicting conclusions from the facts. *See Gulf, M. & O.R.R. v. Underwood*, 182 Tenn. 467, 474, 187 S.W.2d 777, 779 (1945); *Pettus v. Hurst*, 882 S.W.2d 783, 788 (Tenn. Ct. App. 1993). These conclusions, however, must be based on more than speculation, conjecture, and guesswork. *See Daniels v. White Consol. Indus., Inc.*, 692 S.W.2d 422, 425 (Tenn. Ct. App. 1985). A trial court may direct a verdict where the plaintiff's evidence fails to establish a prima facie case. *See Eaton v. McLain*, 891 S.W.2d at 590-91 n.3; *Harrogate Corp. v. Systems Sales Corp.*, 915 S.W.2d 812, 818 (Tenn. Ct. App. 1995).

## IV.

Ms. Spann's claim against Mr. Abraham is based on the Tennessee Human Rights Act. Specifically, she asserts that Mr. Abraham violated the Act by discriminating against her because she was pregnant. Accordingly, we must first turn to the Act to determine the elements of Ms. Spann's claim and the nature of her

burden of proof.

The Tennessee Human Rights Act is a comprehensive anti-discrimination statute. *See Carr v. United Parcel Serv.*, 955 S.W.2d 832, 834 (Tenn. 1997). It is intended to further the policies of the federal Civil Rights Acts of 1964, 1968, and 1972, including the Pregnancy Discrimination Act of 1978 ("PDA"). *See* Tenn. Code Ann. § 4-21-101(a)(1); *Mayberry v. Endocrinology - Diabetes Assocs.*, 926 F. Supp. 1315, 1326-27 (M.D. Tenn. 1996). Accordingly, the Act proscribes discriminatory employment practices with respect to compensation, terms, conditions, or privileges of employment. *See* Tenn. Code Ann. § 4-21-401(a)(1).

Although the Act's wording differs slightly from the language of Title VII of the Civil Rights Act of 1964, it is clear that the Tennessee General Assembly envisioned that the Act would be coextensive with federal law. *See Parker v. Warren County Util. Dist.*, ___ S.W.2d ___, ___ (Tenn. 1999);[4] *Carr v. United Parcel Serv.*, 955 S.W.2d at 834. Accordingly, Tennessee courts may appropriately look to decisions of federal courts construing Title VII when analyzing claims under the Act. *See Weber v. Moses*, 938 S.W.2d 387, 390 (Tenn. 1996). These federal precedents do not, however, bind or limit Tennessee's courts in giving the fullest possible effect to Tennessee's own human rights legislation. *See Carr v. United Parcel Serv.*, 955 S.W.2d at 835.

## A.
### Pregnancy Discrimination

As originally enacted in 1964, Title VII prohibited the discharge of an employee on the basis of race, color, religion, sex, or national origin. In 1976, the United States Supreme Court held that Title VII could not be extended to prohibit discrimination based on pregnancy because it made no mention of pregnancy. *See General Elec. Co. v. Gilbert*, 429 U.S. 125, 145-46, 97 S. Ct. 401, 412-13 (1976). The Congress responded by amending Title VII with the PDA. As the Supreme

Court later observed, the PDA was intended to overrule its *Gilbert* decision. *See Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 670, 103 S. Ct. 2622, 2624 (1983).

The PDA amended Title VII by providing that the terms "because of sex" or "on the basis of sex" in Title VII shall include "on the basis of pregnancy, childbirth or related medical conditions." *See* 42 U.S.C.A. § 2000e(k) (West 1994); *Soreo-Yasher v. First Office Mgmt.*, 926 F. Supp. 646, 649 (N.D. Ohio 1996); *Mayberry v. Endocrinology - Diabetes Assoc.*, 926 F. Supp. at 1322. It provided no new substantive rules governing discrimination based on pregnancy but rather brought discrimination on the basis of pregnancy within the existing Title VII statutory framework prohibiting employment discrimination based on sex. *See Grant v. General Motors Corp.*, 908 F.2d 1303, 1307 (6th Cir. 1990); *Mayberry v. Endocrinology - Diabetes Assocs.*, 926 F. Supp. at 1322. Thus, PDA claims are analyzed just like any other Title VII discrimination claim. *See DeJarnette v. Corning Inc.*, 133 F.3d 293, 297 (4th Cir. 1998); *Boyd v. Harding Academy of Memphis, Inc.*, 88 F.3d 410, 413 (6th Cir. 1996).

The PDA does not require employers to make it easier for pregnant employees to work or to treat them specially. *See Maldonado v. U.S. Bank*, 186 F.3d 759, 762-63 (7th Cir. 1999); *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 722 (7th Cir. 1998). It does, however, require employers to treat pregnant employees the same as other employees on the basis of their ability or inability to work. *See* Reva B. Siegel, Note, *Employment Equality Under the Pregnancy Discrimination Act of 1978*, 94 Yale L.J. 929, 931 (1985). Thus, as noted in a leading case, the PDA requires employers to ignore an employee's pregnancy as far as practically possible. *See Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 738 (7th Cir. 1994).

Pregnancy under the PDA is to be treated just like any other temporary disability. *See Maganuco v. Leyden Community Sch. Dist. 212*, 939 F.2d 440, 444

(7th Cir. 1991); *Wetzel v. Liberty Ins. Co.*, 511 F.2d 199, 206 (3rd Cir. 1975), *vacated on other grounds*, 424 U.S. 737, 96 S. Ct. 1202 (1976). Thus, employees who are able to work must be permitted to work on the same conditions as other employees, and pregnant employees who are unable to work must be accorded the same leave and fringe benefits provided to other employees who are temporarily unable to work. See 42 U.S.C.A. § 2000e(k); *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1511 (9th Cir. 1989); *Best v. Distribution & Auto Servs., Inc.*, No. 01A01-9812-CH-00652, 1999 WL 704730, at *4 (Tenn. Ct. App. Sept. 13, 1999) (No Tenn. R. App. P. 11 application filed).

Under the PDA, an unlawful employment practice occurs whenever pregnancy alone is a motivating factor for an adverse employment action. *See Hunt-Golliday v. Metropolitan Water Reclamation Dist.*, 104 F.3d 1004, 1010 (7th Cir. 1997). Thus, in order to prevail with a disparate treatment[5] PDA claim, an employee must demonstrate that she was treated differently than other temporarily disabled employees because of her pregnancy or pregnancy-related condition. *See Maldonado v. U.S. Bank*, 186 F.3d at 763; *Deneen v. Northwest Airlines, Inc.*, 132 F.3d 431, 435 (8th Cir. 1998); *Byrd v. Lakeshore Hosp.*, 30 F.3d 1380, 1382 (11th Cir. 1994); *EEOC v. Hacienda Hotel*, 881 F.2d at 1511-12.

The burden of proving the ultimate issue of discrimination always falls on the employee. *See Texas Dep't of Community Affairs v. Burdine*, 450 U. S. 248, 253, 101 S. Ct. 1089, 1093 (1981); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992); *Smith v. Bridgestone/Firestone, Inc.*, No. 01A01-9803-CV-00146, 1999 WL 86977, at *6 (Tenn. Ct. App. Feb. 23, 1999), *perm. app. denied*, (Tenn. Sept. 13, 1999); *Brenner v. Textron Aerostructures*, 874 S.W.2d 579, 583 (Tenn. Ct. App. 1993). Discrimination claims brought in accordance with the PDA are no exception. Thus, an employee asserting a PDA claim has the ultimate burden of establishing that her employer discriminated against her "because of" her pregnancy. See 42 U.S.C.A. § 2000e-2(a)(1)&(2) (West 1994); *DeJarnette v. Corning Inc.*, 133 F.3d at 297; *Quarantino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir. 1995).

Pregnancy discrimination may be established in two ways. First, using the direct method, a PDA plaintiff may present enough evidence to demonstrate that the adverse employment action was the result of intentional discrimination. *See Maldonado v. U.S. Bank*, 186 F.3d at 763. This method focuses primarily on the discriminatory conduct. *See Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1185 (2d Cir. 1992). Employees using this method may present either direct or circumstantial evidence of intentional discrimination or a combination of both. *See Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 550 (10th Cir. 1999); *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d at 722-23.[6] Direct evidence of intentional discrimination includes an acknowledgment by an employer of discriminatory intent. Circumstantial evidence of discrimination includes ambiguous statements, suspicious timing, instances in which similarly situated, non-pregnant employees received systematically better treatment. *See Marshall v. American Hosp. Ass'n*, 157 F.3d at 525; *Troupe v. May Dep't Stores Co.*, 20 F.3d at 736.

The second way to establish discrimination is the indirect method. The indirect method embodies the now ubiquitous burden-shifting approach set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 762, 807, 93 S. Ct. 1817, 1826-27 (1973).[7] Under this method, once a PDA plaintiff makes out a prima facie case of discrimination, the burden shifts to the employer to show a legitimate, nondiscriminatory reason for the plaintiff's treatment. If the employer offers a legitimate, nondiscriminatory reason for its treatment of the plaintiff, the burden shifts back to the plaintiff to show that the employer's proffered reason is pretextual. *See Maldonado v. U.S. Bank*, 186 F.3d at 763; *Geier v. Medtronic, Inc.*, 99 F.3d 238, 241-42 (7th Cir. 1996).

A plaintiff using the indirect method establishes a prima facie case of pregnancy discrimination by showing: (1) that she was pregnant; (2) that she was qualified for her job; (3) that she was subjected to an adverse employment action; and (4) that there is a nexus between her pregnancy and the adverse employment

action.  *See Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1148 (10th Cir. 1999); *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998); *Boyd v. Harding Academy of Memphis, Inc.*, 88 F.3d at 413; *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 421 (1st Cir. 1996).  Plaintiffs establish the connection between their pregnancy and the adverse employment action by demonstrating that comparable non-pregnant employees received more favorable treatment.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. at 802; 93 S. Ct. at 1824; *Ensley-Gaines v. Runyon*, 100 F.3d 1220, 1224 (6th Cir. 1996); *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1538 (11th Cir. 1987).

## B.
## Ms. Spann's Pregnancy Discrimination Claim

Ms. Spann is asserting a disparate treatment, as opposed to a disparate impact, discrimination claim.  It is unclear, however, whether she undertook to prove her claim using the direct method or the indirect method.[8]  PDA plaintiffs may simultaneously employ the direct method and the indirect method.  *See Maldonado v. U.S. Bank*, 186 F.3d at 763; *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d at 723.  In addition, a PDA plaintiff's emphasis on one method does not prevent the courts from basing their decision on the other method if they conclude that a discrimination claim has been established.  *See Indurante v. Local 705, Int'l Bhd. of Teamsters*, 160 F.3d 364, 366-67 (7th Cir. 1998).  Accordingly, we must analyze the directed verdict taking both methods of proof into consideration.

## 1.
## Ms. Spann's Direct Method Case

Ms. Spann's direct case for pregnancy discrimination contains five ingredients.  She rests her claim on (1) Ms. Abraham's change of attitude upon discovering that Ms. Spann was pregnant; (2) Ms. Abraham's inquiry concerning

whether she had considered her "options;" (3) Mr. Abraham's comment that if she did not "quit it [horse playing with Mr. Abraham's son], that I just might end up miscarrying;" (4) Mr. Abraham's monitoring her attendance more closely after he learned she was pregnant; and (5) Mr. Abraham's request that she accept a temporary reassignment during the later stages of her pregnancy. Ms. Spann asserts that this evidence, considered together, is sufficient to create a jury question regarding Mr. Abraham's intent to discriminate against her because she was pregnant.

We turn first to the evidence regarding the statements and attitudes of Mr. Abraham and his daughter. Title VII was never envisioned to be a "general civility code" for the American workplace, *see Faragher v. City of Boca Raton*, 524 U.S. 775, ___, 118 S. Ct. 2275, 2283-84 (1998), nor does it guarantee a utopian workplace or even a pleasant one. *See Vore v. Indiana Bell Tel. Co.*, 32 F.3d 1161, 1162 (7th Cir. 1994). Rather than prohibiting all verbal or physical harassment in the workplace, Title VII prohibits discrimination in the workplace based on gender. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, ___, 118 S. Ct. 998, 1002 (1998); *Ulloa v. American Express*, 822 F. Supp. 1566, 1571 (S.D. Fla. 1993).

Accordingly, isolated and ambiguous comments and changes in attitude tending to suggest a discriminatory frame of mind are insufficient, standing alone, to prove an employer's discriminatory intent. *See Speen v. Crown Clothing Corp.*, 102 F.3d 625, 636 (1st Cir. 1996); *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 733 (4th Cir. 1996); *LaPointe v. United Auto Workers Local 600*, 8 F.3d 376, 380 (6th Cir. 1993). In order for comments to be germane, they must be contemporaneous or causally related to the employer's decision-making process. *See Wichmann v. Board of Trustees of Southern Ill. Univ.*, 180 F.3d 791, 801 (7th Cir. 1999); *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d at 723.

Title VII did not require either Mr. Abraham or his daughter to be enthusiastic

or even supportive of Ms. Spann's pregnancy, and thus, their undisguised disapproval, by itself, does not give rise to a cause of action under the Tennessee Human Rights Act. Personality conflicts alone cannot supply a basis for a discrimination claim, *see Pilgrim v. Trustees of Tufts College*, 118 F.3d 864, 871 (1st Cir. 1997); *Aramburu v. The Boeing Co.*, 112 F.3d 1398, 1406 (10th Cir. 1997); *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 70 (6th Cir. 1982). Accordingly, unkind or insensitive statements made to an employee, even if in front of others, ordinarily will not rise to the level of a discriminatory employment action. *See Caussade v. Brown*, 924 F. Supp. 693, 701-02 (D. Md. 1996), *aff'd*, 107 F.3d 865 (4th Cir. 1997).

When considered in the context in which they were made, the comments relied on by Ms. Spann provide no evidence of discriminatory intent. Ms. Alexander 's inquiry concerning Ms. Spann's consideration of her "options" (presumably alluding to her decision to continue her pregnancy) was a question prompted by Ms. Spann's relationship with the father of her child. Mr. Abraham's warning about the possibility of a miscarriage came at a time when Ms. Spann was engaged in horseplay with his son. There is nothing in this record to link Mr. Abraham's or his daughter's comments or Ms. Abraham's attitude to a discriminatorily motivated adverse employment action.

By the same token, the fact that Mr. Abraham's concern about Ms. Spann's absences after she announced she was pregnant does not give rise to an inference of pregnancy discrimination. Employers in Tennessee have the right to expect employees to report to work at the agreed-upon time and to work for the agreed-upon shift. *See Trice v. Traughber*, 797 S.W.2d 886, 888 (Tenn. 1990); *Wallace v. Stewart*, 559 S.W.2d 647, 648 (Tenn. 1977). The PDA does not require an employer to overlook a pregnant employee's absences from work, unless, as a general matter, the employer overlooks the absences of non-pregnant employees. *See Troupe v. May Dep't Stores Co.*, 20 F.3d at 738. Accordingly, monitoring a

pregnant employee's absences is not proof of discriminatory intent. *See Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d at 725. The evidence is unrefuted that Ms. Abraham and Ms. Spann continued to swap shifts after Ms. Spann announced that she was pregnant and that Mr. Abraham did not take an adverse employment action against Ms. Spann for her missing her shift following the scheduling misunderstanding with Ms. Abraham.

Finally, Mr. Abraham's proposal of a temporary reassignment during the later stages of Ms. Spann's pregnancy and maternity leave does not amount to either direct or circumstantial evidence of pregnancy discrimination. Ms. Spann argues that the proposal is evidence of discriminatory intent because it is based on Mr. Abraham's misperception of her ability to continue working. Ms. Spann's arguments to the contrary, Title VII does not require employers to make fair and accurate assessments of their employees' abilities, nor does it require employers to assign employees to appropriate positions. *See Mayberry v. Endocrinology-Diabetes Assocs.*, 926 F. Supp. at 1323-24.

Title VII is not intended to intrude the courts directly into complex assessments of employment qualifications, transferability of skills, staffing requirements, and employee productivity. *See Levin v. Delta Air Lines, Inc.*, 730 F.2d 994, 1001 (5th Cir. 1984). Accordingly, Title VII does not require courts to act as super personnel departments to re-examine an employer's judgment or its management prerogatives and business decisions. *See Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999); *Rodriguez-Cuervos v. Wal-Mart Stores, Inc.*, 181 F.3d 15, 22 (1st Cir. 1999); *Simms v. Oklahoma ex rel. Dep't of Mental Health*, 165 F.3d 1321, 1330 (10th Cir. 1999); *Brill v. Lante Corp.*, 119 F.3d 1266, 1272 (7th Cir. 1997). Accordingly, the issue in Title VII cases is not whether the employer made a correct decision, but rather whether the employer discriminated against an employee in a protected class. *See McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1349 (5th Cir. 1985).

Ms. Spann's testimony demonstrates that Mr. Abraham's temporary reassignment proposal was a business-related decision in anticipation of her inevitable maternity leave. Mr. Abraham desired to maintain a manager at the Bellevue restaurant at all times and desired to train his son to take Ms. Spann's place temporarily while she was on maternity leave. Mr. Abraham's assurances that Ms. Spann's income would not be affected by the temporary reassignment and that she would be able to reclaim her assistant manager job after returning from maternity leave dispel any inference that his proposal was discriminatory. Rather, it was premised on the non-discriminatory assumption that once Ms. Spann was no longer temporarily disabled as an assistant manager, she could expect to and would resume her duties. That is anything but discriminatory.

## 2.
## Ms. Spann's Indirect Method Case

In order to make out a prima facie case of pregnancy discrimination using the *McDonnell Douglas* indirect method, Ms. Spann must show (1) that she was pregnant, (2) that she was qualified for her job, (3) that she was subjected to an adverse employment action, and (4) that there is a nexus between her pregnancy and the adverse employment action. The fourth element may be proven by showing that Ms. Abraham treated similarly situated, non-pregnant employees better than Ms. Spann.

Ms. Spann easily satisfies the first two elements. She was undoubtedly pregnant when the alleged adverse employment action or actions occurred. In addition, it is equally clear that her work performance was meeting Mr. Abraham's expectations. Even after Ms. Spann filed suit, Mr. Abraham stated that she was a good worker and that he would still hire her back if she wished to return to work. Thus, for the purpose of this appeal, it is undisputed that Ms. Spann was qualified to be a cook and an assistant manger at the Sir Pizza in Bellevue.

Whether Ms. Spann was subjected to an adverse employment action is a closer question. Not every unpleasant matter occurring at work and not every action by an employer that an employee disagrees with or dislikes constitutes an adverse employment action. *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997); *Leson v. ARI of Conn., Inc.*, 51 F. Supp. 2d 135, 142 (D.Conn. 1999); *Fortner v. Kansas*, 934 F. Supp. 1252, 1266-67 (D. Kan. 1996), *aff'd*, 122 F.3d 40 (10th Cir. 1997). For the purposes of Title VII, an "adverse employment action" is a materially adverse change in terms and conditions of employment, such as termination of employment, demotion with a decrease in salary, reclassification to a less distinguished title, material loss of benefits, or significantly diminished material responsibilities. *See Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958, 969 (8th Cir. 1999); *Richardson v. New York State Dep't of Correctional Servs.*, 180 F.3d 426, 446 (2d Cir. 1999); *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999); *Kocsis v. Multi-Care Mgt., Inc.*, 97 F.3d 876, 885-86 (6th Cir. 1996). It must be more than a mere inconvenience or alteration of an employee's job responsibilities. *See Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106, 1111-12 n.7 (7th Cir. 1998).

It is not altogether apparent how Ms. Spann's temporary reassignment during the later stages of her pregnancy amounts to an adverse employment action. During oral argument, the worst face that Ms. Spann's attorney could put on Mr. Abraham's proposal was that the temporary position was "lower in status" and that the reassignment would make Ms. Spann a "supervised employee" rather than a supervisor. Thus, Ms. Spann perceived the reassignment as a demotion to a position with diminished status and with fewer responsibilities. Taking this evidence in a light most favorable to Ms. Spann, the evidence creates a jury issue on this point. Accordingly we will consider the proposed reassignment as an adverse employment action for the purposes of this appeal.

The final element of a discrimination claim under the *McDonnell Douglas* approach requires proof that the employer treated similarly situated non-pregnant

employees better. To meet this element of proof, a PDA plaintiff must make meaningful comparisons between herself and other employees who are similarly situated in all material respects. *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). The comparable employees should have held similar positions, dealt with the same level of supervision, and been subject to the same general employer-imposed work rules and requirements. *See Mitchell v. Toldeo Hosp.*, 964 F.2d at 583.

None of the employees to whom Ms. Spann compared herself were similarly situated to her. Mr. Kimbrough was only a part-time employee. None of the other management employees, including Ms. Abraham, ever took or needed to take off time from work because of a temporary disability. Ms. Spann's chief complaint appears to be that other Sir Pizza employees were permitted to swap work schedules "without a problem." However, as far as this record shows, so was Ms. Spann. The record does not contain one instance where Ms. Spann's request to trade shifts was refused or where she was formally disciplined or reprimanded for swapping a shift. Accordingly, the trial court correctly concluded that Ms. Spann failed to prove that Mr. Abraham treated similarly situated non-pregnant employees better than he treated her.

## V.

Ms. Spann failed to establish by either direct or circumstantial evidence a prima facie case of discrimination under the Tennessee Human Rights Act. Consequently, the trial court correctly granted the employer's motion for a direct verdict. We affirm. We tax the costs of this appeal to Christine Spann for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____

SAMUEL L. LEWIS, JUDGE


_____

BEN H. CANTRELL, JUDGE