# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 3, 2005 Session

## ANTOINETTE CHRISTINE REGNIER v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

### Appeal from the Chancery Court for Davidson County
### No. 00-2212-I    Claudia Bonnyman, Chancellor

### No. M2004-00351-COA-R3-CV - Filed May 11, 2006

WILLIAM C. KOCH, JR., P.J., M.S., concurring.

I concur with Judge Cain's decision to affirm the jury verdict in this case. Cases like this are fact-intensive, and thus care must be taken to avoid applying our decisions to dissimilar circumstances. I have prepared this separate opinion to emphasize the evidence upon which the jury's verdict in this case is based.

## I.

Antoinette Regnier joined the Metropolitan Police Department in 1993. Five years later, in July 1998, she was promoted to sergeant and was selected for a prestigious assignment as an instructor at the Police Training Academy. Three months later, a female intern complained to Sergeant Regnier that Lieutenant Anthony Carter, Sergeant Regnier's immediate superior, had sexually harassed her.[1] Sergeant Regnier herself had been the target of sexually suggestive remarks by Lieutenant Carter,[2] and she had also overheard Lieutenant Carter make similar inappropriate comments to other females at the Academy.

Following Department policy, Sergeant Regnier reported Lieutenant Carter's conduct to the Director of the Academy. The Director decided to handle the matter informally by calling a meeting of the entire staff to discuss sexual harassment issues and appropriate conduct on the job. Lieutenant Carter later apologized privately to Sergeant Regnier and publically apologized for his conduct at a staff meeting held several weeks later.

Despite his outward contrition, Lieutenant Carter was extremely upset with Sergeant Regnier. He berated her during a staff meeting in March 1999 and characterized her earlier sexual harassment

---

[1] The intern reported that Lieutenant Carter had shown her a suggestive picture of himself wearing a lime green bikini and had asked her whether she would like to "try riding this wild stallion."

[2] Lieutenant Carter had called Sergeant Regnier a "lean mean sex machine" and had commented to her that "[y]our husband must be real proud of the way you look under those clothes."

complaint as "bulls\*\*t." Lieutenant Carter also decided to exploit his personal friendship with Deputy Chief of Police Deborah Faulkner[3] to cause both Sergeant Regnier and the Academy's Director to be transferred. His efforts bore fruit. Both the Director's and Sergeant Regnier's names were on the very next transfer list.

Both the Director and Sergeant Regnier attempted to discuss their transfers with the Chief of Police, but he referred them to Deputy Chief Faulkner. Sergeant Regnier had received good performance ratings at the Academy. Deputy Chief Faulkner did not express concerns about Sergeant Regnier's performance during their meeting, and she did not respond directly to Sergeant Regnier's concern that her transfer stemmed from the sexual harassment complaint against Lieutenant Carter. Deputy Chief Faulkner told Sergeant Regnier that she was "very bright [and] highly educated" and that she would benefit from additional "street experience."

In the final analysis, both the Sergeant Regnier and the Director were transferred away from the Academy. Sergeant Regnier was initially assigned to the B-Detail, apparently to disrupt her law school schedule. Because she desired to complete law school, Sergeant Regnier requested and received an assignment to the midnight shift with few supervisory responsibilities. Deputy Chief Faulkner appointed Lieutenant Carter acting Director of the Academy and later named him the Director. In a November 1999 email to the Deputy Chief, Lieutenant Carter observed "[m]uch better around here since the removal of the last piece of CANCER."

## II.

The Tennessee Human Rights Act permits an employee to recover damages from his or her employer if the employer retaliates against him or her for complaining about discriminatory conduct in the workplace. Tenn. Code Ann. § 4-21-301(1) (2005). To be compensable, the retaliation must amount to an adverse employment action. *Austin v. Shelby County Gov't*, 3 S.W.3d 474, 480 (Tenn. Ct. App. 1999); *Newsom v. Textron Aerostructures*, 924 S.W.2d 87, 96 (Tenn. Ct. App. 1995). The phrase "adverse employment action" is now a term of art in cases like this. The courts have defined it to encompass actions by employers that cause "a material and adverse change in the terms and conditions of employment." *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 707 (Tenn. 2000); *see also Spann v. Abraham*, 36 S.W.3d 452, 468 (Tenn. Ct. App. 1999).

Not every employment action that makes an employee unhappy rises to the level of an adverse employment action. *Tyler v. Ispat Inland, Inc.*, 245 F.3d 969, 972 (7th Cir. 2001); *Spann v. Abraham*, 36 S.W.3d at 468. An employment action must be more disruptive than a mere inconvenience or an alteration of job responsibilities to be considered as an adverse employment action. *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002).

---

[3] Both Lieutenant Carter and Deputy Chief Faulkner were 1974 graduates from the Academy. They were close friends. In an October 1998 email, Lieutenant Carter told Deputy Chief Faulkner "Trust is earned, and I'll never betray you. CLASS OF "74" A Friend to the end!!!!!!!!!!!!!!!!!!!!"

Lateral transfers that do not involve a demotion in form or substance do not amount to adverse employment actions. *Keeton v. Flying J, Inc.*, 429 F.3d 259, 273 (6th Cir. 2005); *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996). Nor does a pure lateral transfer become an adverse employment action simply because the affected employee subjectively prefers one position over another. *McKenzie v. Milwaukee County*, 381 F.3d 619, 625 (7th Cir. 2004). However, a transfer or reassignment without a change in salary may amount to an adverse employment action if it involves (1) a less distinguished title, (2) a material loss of benefits, (3) a significant change in work hours or location, (4) significantly different responsibilities, (5) a significant reduction in the employee's career prospects by preventing the employee from using his or her skills or experience, or (6) other factors that are uniquely relevant to the particular situation. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 2268-69 (1998); *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004); *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996); *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d at 707.

### III.

In order to prevail in this case, Sergeant Regnier was required to prove that a reasonable person in her position would have viewed her transfer from the Academy as an adverse employment action. *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998). Based on the facts of this case, I have concluded that she succeeded. Sergeant Regnier and her witnesses established that working as an instructor at the Academy was a prestigious position compared to other positions in the Department. The job is highly sought-after, and officers competed for the assignment. Working at the Academy required more skills than other assignments in the Department.[4] Sergeant Regnier's patrol assignment involved significantly different work hours and a significantly different schedule, and her position at the Academy involved significantly more and different responsibilities than her patrol assignment.

A court should grant a Tenn. R. Civ. P. 50.02 motion in accordance with the motion for directed verdict only when it finds that reasonable minds cannot differ with regard to the conclusions to be drawn from the evidence. *Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000); *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994). Based on my review of the record, I concur with Judge Cain's conclusions that the trial court properly denied the Metropolitan Government's Tenn. R. Civ. P. 50.02 motion and that the damages awarded by the jury are not excessive and are supported by the evidence.

————————————————————
WILLIAM C. KOCH, JR., P.J., M.S.

---

[4]The fact that a position requires more qualifications is an indication of prestige. *White v. Burlington N. & Santa Fe Ry.*, 364 F.3d 789, 803 (6th Cir. 2004), *cert granted*, ___ U.S. ___, 126 S. Ct. 797 (2005).