NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0256n.06

No. 20-6389

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JUNE MICHELLE COX,

     Plaintiff-Appellant,

v.

THE LITTLE CLINIC OF TENNESSEE, LLC,

     Defendant-Appellee.

**FILED**
May 26, 2021
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

BEFORE:    CLAY, McKEAGUE, and LARSEN, Circuit Judges.

**CLAY, Circuit Judge.** In this diversity action, Plaintiff June Michelle Cox appeals from the district court's grant of summary judgment to Defendant The Little Clinic of Tennessee, LLC, on her claim that Defendant violated the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-401, *et seq.*, by terminating her employment as a nurse practitioner because she was pregnant. For the reasons set forth below, we **AFFIRM** the district court's decision.

## BACKGROUND

In December 2015, Cox began working as a nurse practitioner for The Little Clinic. During her employment, Cox had extensive tardiness issues. On July 26, 2017, she was verbally counseled for being late to work on seven separate occasions within a ninety-day period. On December 8, 2017, Cox received a written warning based on twelve instances of tardiness since April 2017, with five of the instances and one absence coming after her July 26 verbal counseling.

On April 13, 2018, Cox notified Whitney Cochran, the clinic manager, that she was pregnant and had a September due date. On April 18, 2018, Cox "received a final written warning for having fifteen tardies, two incidents of leaving work early, two missed time-card punches, and one absence over a twelve-month period, including three tardies, two early departures and two missed punches since her prior written warning." (R. 35 at PageID# 443.) During a discussion about the final written warning with Gina Haffner, a regional clinic director, Cox also informed Haffner about a patient she had examined earlier in the day. Cox had told this patient "that she needed additional documentation from his physician in order to certify him as a driver under the U.S. Department of Transportation ('DOT') guidelines." (*Id.*) Because the DOT patient was "really upset" about Cox requiring a follow-up, and as he only had to bring in paperwork, she informed him that he would not be charged the usual $35 follow-up fee. (R. 20-4 at PageID# 231.) After the DOT patient also complained that he was leaving town and needed his certification, without ensuring that the patient had signed a medical release covering his wife, Cox told him that his wife could bring in the paperwork and pick up his certification. During Cox and Haffner's conversation, Haffner agreed that Cox had correctly told the DOT patient that he had to bring in additional paperwork. But they did not discuss whether Cox was authorized to waive the $35 fee or whether it was appropriate for Cox to provide medical information to the patient's wife.

Following her discussion with Haffner, in her progress notes on the DOT patient's chart, Cox wrote: "Notified Gina RCD about situation regarding DOT physical and patient leaving upset. RCD agreeable with plan and documentation needed to verify patient is safe to operate CMV per DOT exam guidelines." (R. 23-1 at PageID# 316.) However, Haffner believed that this note did not accurately reflect her conversation with Cox. Accordingly, two days later, she added an addendum stating that "Cox consulted with me regarding the medical plan of care, but never sought

my advice nor received any instruction regarding the above discussed financial arrangement or release of patient information. I am only in agreement with the medical plan of care portion with the reference." (*Id.*)

Haffner also told her supervisor, Meggen Brown, about the situation with the DOT patient's chart. On April 25, 2018, Brown called Cochran to discuss the chart issue. In addition to discussing the chart, Cochran, who was "tired of dealing with tardiness; patient complaints; and, frankly, someone who was expected to be my partner who did not act like my partner," mentioned Cox's deficient performance to Brown. (R. 20-3 at PageID## 203–04.) Cochran stated that she did not tell Brown that Cox was pregnant.

On April 27, 2018, Brown came to the clinic and briefly met with Cochran. Cochran reiterated that she was "tired" of Cox's conduct. (R. 20-2 at PageID# 182.) But she allegedly did not mention Cox's pregnancy. Cochran then brought Cox to meet with Brown. The meeting began with Brown questioning Cox about the DOT patient's chart. After Cox explained what happened with the DOT patient, Brown informed her that she had "committed documentation fraud" because Haffner had not agreed with her actions. (R. 20-4 at PageID# 246.) "The Little Clinic considers falsification or misrepresentation of information to be a 'Type "A" Offense,' which may result in immediate suspension or termination of employment." (R. 35 at PageID# 446.) According to Cox, Brown said that "she was going to terminate my employment, but she would give me the opportunity to resign instead." (R. 20-4 at PageID# 246.) If Cox refused to resign, Brown explained that she could "report [her] to the state board for falsifying a record, and [she] could lose [her] license over this." (*Id.*) After protesting the determination that she had committed documentation fraud to no avail, Cox got "teary-eyed" and said, "I'm like, I'm 20 weeks along. Now are you going to take away my insurance." (*Id.*) Brown responded, "I know that. But if you resign, you are

going to – you can keep your insurance through the end of May." (*Id.* at PageID# 247.) Because Cox had a high-risk pregnancy and could not afford to lose her insurance, she told Brown that she would resign. Brown then handed Cox a blank sheet of paper and told her to write: "To [whom it may] concern, please accept my resignation immediately." (*Id.*; R. 21-5 at PageID# 301.) Beneath Cox's note, Brown wrote, "[p]er conversation with Michelle Cox she will be termed in system as of 5/21/18 in lieu to keep insurance effective." (R. 21-5 at PageID# 301.)

Defendant hired Amanda Hunter as a nurse practitioner to replace Cox even though Cochran knew that Hunter wanted to become pregnant. In January 2019, Hunter told Cochran that she was pregnant, she gave birth on September 4, 2019, and she took maternity leave until November 26, 2019—all without losing her position with The Little Clinic. From 2014 through 2019, twenty-eight of The Little Clinic's nurse practitioners and clinic managers had a child within nine months of their start dates. Three were known to be pregnant when they were hired. None were discharged. And two were promoted while they were known to be pregnant.

On June 20, 2018, Cox filed suit against The Little Clinic in Tennessee state court alleging pregnancy discrimination in violation of the THRA. Based on diversity of citizenship, The Little Clinic timely removed the case to the district court. On October 31, 2019, The Little Clinic moved for summary judgment. On November 12, 2020, the district court granted the motion for summary judgment and dismissed the case. This timely appeal followed.

## DISCUSSION

The Tennessee Legislature enacted the THRA in 1978. *See Sneed v. City of Red Bank*, 459 S.W.3d 17, 26 (Tenn. 2014). One of the purposes of the THRA is to "[p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964, 1968 and 1972, [and] the Pregnancy Amendment of 1978 (42 U.S.C. § 2000e(k))." Tenn. Code Ann. § 4-21-

101(a)(1). The legislature's intent was for "the THRA 'to be coextensive with federal law.'" *Parker v. Warren Cnty. Util. Dist.*, 2 S.W.3d 170, 172 (Tenn. 1999) (quoting *Carr v. United Parcel Serv.*, 955 S.W.2d 832, 834–35 (Tenn. 1997)). "Accordingly, an analysis of claims under the THRA is the same as under Title VII of the Federal Civil Rights Act." *Lynch v. City of Jellico*, 205 S.W.3d 384, 399 (Tenn. 2006). Thus, "[i]n the absence of direct evidence of . . . discrimination," the familiar *McDonnell Douglas* burden-shifting framework applies to claims under the THRA. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n.1 (6th Cir. 2008) ("The analysis of claims brought pursuant to the THRA is identical to the analysis used for Title VII claims."); *Spann v. Abraham*, 36 S.W.3d 452, 465 (Tenn. Ct. App. 1999) (applying the *McDonnell Douglas* burden-shifting framework to a pregnancy discrimination claim brought under the THRA); Tenn. Code Ann. § 4-21-311(e) (codifying the burden-shifting framework into the THRA).

The *McDonnell Douglas* framework is "an allocation of the burden of production and an order for the presentation of proof." *Williams v. City of Burns*, 465 S.W.3d 96, 112 (Tenn. 2015) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). The framework "requires that the plaintiff first establish a *prima facie* case of discrimination." *Prebilich-Holland v. Gaylord Ent. Co.*, 297 F.3d 438, 442 (6th Cir. 2002); *see also Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 135 S. Ct. 1338, 1353 (2015). "In order to make out a *prima facie* case of pregnancy discrimination using the *McDonnell Douglas* indirect method, [a plaintiff] must show (1) that she was pregnant, (2) that she was qualified for her job, (3) that she was subjected to an adverse employment action, and (4) that there is a nexus between her pregnancy and the adverse employment action." *Spann*, 36 S.W.3d at 467; *see also Tysinger v. Police Dep't*, 463 F.3d 569, 573 (6th Cir. 2006). On

summary judgment, Defendant only disputed the latter two elements of Cox's *prima facie* claim, and the district court held that Cox "sufficiently demonstrated a genuine issue of material fact as to the two disputed elements of her *prima facie* claim." *Cox v. Little Clinic of Tenn., LLC*, No. 18-679, 2020 WL 6685517, at \*4, 11 (M.D. Tenn. Nov. 12, 2020). Neither party disputes this conclusion.

Cox's success in demonstrating the *prima facie* elements of her pregnancy discrimination claim, "create[d] a rebuttable presumption of discrimination," and, at the second step of the *McDonnell Douglas* framework, the burden shifted to Defendant "to articulate a legitimate, nondiscriminatory reason for taking the challenged employment action." *Michael*, 496 F.3d at 593 (quoting *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003)). "This is merely a burden of production, not of persuasion, and it does not involve a credibility assessment." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). The district court held that Defendant "articulated a legitimate, nondiscriminatory reason for its alleged actions"—its "belief that Plaintiff had falsified the DOT patient's medical chart"—and, again, neither party has challenged this holding. *Cox*, 2020 WL 6685517, at \*11.

"Having rebutted the presumption of discrimination raised by [Cox's] *prima facie* case, the question remain[ed] whether, under the burden-shifting framework of *McDonnell Douglas*, [Cox] then produced adequate evidence demonstrating that [Defendant's] proffered reason was a pretext for discrimination." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012) (citing *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007)). "A plaintiff may establish pretext by showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Id.* (citing *Dews v. A.B. Dick*

*Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)); *see also Williams*, 465 S.W.3d at 119. After closely analyzing the wording of the disputed medical chart, the district court held that there is "a genuine issue as to whether Plaintiff falsified the patient note." *Cox*, 2020 WL 6685517, at \*13.

However, for two independent reasons, the district court nonetheless granted summary judgment to Defendant. First, "[t]his court has adopted an 'honest belief' rule with regard to an employer's proffered reason for discharging an employee." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806–07 (6th Cir. 1998)). "Under this rule, as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Id.* (citing *Smith*, 155 F.3d at 806); *see also Seeger*, 681 F.3d at 285–86. According to the district court, Defendant showed "that it reasonably believed the information in the DOT patient's chart was inaccurate, which was an offense that could result in immediate suspension or termination," and Cox was required to "put forth evidence which demonstrates that Defendant did not honestly believe in its proffered non-discriminatory reason, which she has not done." *Cox*, 2020 WL 6685517, at \*14.

Second, the district court explained that, "[t]o avoid summary judgment," not only must Cox "present evidence from which a reasonable jury could find that the alleged falsification of documents was not the real reason that Defendant allegedly terminated her," but she must also show "that unlawful pregnancy discrimination in fact was." *Id.*; *see also St. Mary's*, 509 U.S. at 519 ("It is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination."); *Seeger*, 681 F.3d at 285; Tenn. Code Ann. § 4-21-311(e) ("The plaintiff at all times retains the burden of persuading the trier of fact that the plaintiff

has been the victim of intentional discrimination or retaliation."). And the district court held that "[t]his Plaintiff has not done." *Id.* "For *these* reasons," the district court concluded: "Plaintiff cannot establish her THRA pregnancy discrimination claim, and it is therefore subject to summary judgment." *Id.* at *15 (emphasis added).

"When a district court provides two alternative grounds for its decision, the losing party must challenge each ground on appeal to change the outcome." *Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 456 (6th Cir. 2021). That is, because "[w]e review judgments, not opinions," and an appellant "cannot prevail by challenging only one of the bases for the district court's decision," the failure to "follow this cardinal rule" requires us to affirm the district court. *Id.* at 456–57. In her opening brief on appeal, Cox only challenged the district court's application of the "honest belief" rule. (*See, e.g.*, Appellant Br. at 19 ("Pursuant to the *Erie* Doctrine, the District Court, sitting in diversity, was required to apply Tennessee substantive law. The 'honest belief' doctrine does not exist under Tennessee law.").) Although she does argue in her reply brief that "the record is more than sufficient to establish a causal connection between her pregnancy and her termination," (Reply Br. at 5), "even well-developed arguments raised for the first time in a reply brief" are "forfeited." *Stewart*, 990 F.3d at 457 (citing *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 257 (6th Cir. 2018)).

In short, nowhere in Cox's opening brief on appeal does she even reference the district court's holding that she failed to present evidence showing that unlawful pregnancy discrimination was the reason for her termination. But Cox's "goal is to undo the judgment below," and to do so, she "need[s] to win two arguments"—(1) that the district court improperly applied the "honest belief" rule to her claim; and (2) that the district court erred in holding that she did not present sufficient evidence for a jury to hold that unlawful pregnancy discrimination was the reason for

her termination. *Id.* Because Cox forfeited the right to challenge the second basis for the district court's holding, even if she prevailed on her argument about the "honest belief" rule, the district court's holding "would still stand." *Id.* "As a result, so must the judgment," and so we affirm. *Id.*

**CONCLUSION**

For the reasons stated above, the judgment of the district court is **AFFIRMED**.