IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 10, 2006 Session

## WILLIE V. MELVIN, III, M.D. v. ANITA LOUISE JOHNSON-MELVIN, M.D.

Appeal from the Chancery Court for Sumner County
No. 2000D-138      Tom E. Gray, Judge

No. M2004-02106-COA-R3-CV - Filed April 27, 2006

Dr. Johnson ("the wife") and Dr. Melvin ("the husband") were married in October 1988 while the wife was pregnant with the parties' first child. That child born in 1989 and the second child born in 1991 are the only minor children of this marriage. Husband filed a complaint for divorce, claiming inappropriate marital conduct. The wife counterclaimed in that action. The actions of the trial court from which the wife appeals, and with which both parties raise issues on appeal, include the Decree of Divorce issued August 6, 2004; the interlocutory order and memorandum entered July 28, 2004; and three post-trial orders and one memorandum. Issues raised on appeal concern distribution of marital property, award of alimony and child support, and refusal to award the wife attorney fees and costs. We affirm the judgment of the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J., joined. WILLIAM C. KOCH, JR., P.J., M.S., filed a separate concurring opinion, in which PATRICIA J. COTTRELL, J. joined.

Audrey L. Anderson, Nashville, Tennessee, for the appellant, Anita Johnson-Melvin, M.D.

Gregory D. Smith and Aminah M. Collick, Nashville, Tennessee, for the appellee, Willie V. Melvin, III, M.D.

### OPINION

**Proceedings and Salient Facts**

The parties to this divorce case married in October 1988. The two children born to that marriage are still minors. The husband filed for divorce in March 2000, and the wife counterclaimed. Thus began a contentious battle over visitation, custody, property and support. In

the midst of this battle, in May 2002, the trial court entered an order setting *pendente lite* support at $951 per month, or 21% of the husband's income. The wife filed an amended complaint in April 2004 seeking permanent and periodic alimony due to a lupus diagnosis. In addition, prior to the final hearing, she filed two motions seeking relief from the *pendente lite* order. These motions were taken under advisement pending the final hearing, which took four days spread over three months.

The court entered its Order and Memorandum on July 28, 2004 regarding rehabilitative alimony. The Decree of Divorce was entered August 6, 2004. The wife filed a notice of appeal on August 25, 2004, after which both parties filed motions to alter or amend. These motions were resolved by two orders and one memorandum. From the actions of the trial court the wife appeals, asserting as error the trial court's valuation of the marital estate, its refusal to award periodic alimony, its alleged inadequate modification of the *pendente lite* child support, as well as its refusal to award attorney's fees. The husband challenges the modification of child support as contrary to statute. In addition, Husband argues that the modification inappropriately required him to pay half of the private school tuition for the children and improperly gave credit to the wife for mortgage payments made by her during the divorce. Husband also challenges the amount of rehabilitative alimony as insufficiently supported by the record.

**Marital Property**

When the husband filed his divorce complaint, the trial court entered a Temporary Restraining Order which enjoined the wife from "dissipating, withdrawing, transferring, or liquidating any assets, except in the normal course of business with a full accounting, pending orders of the Court." In the Decree of Divorce which was entered August 6, 2004, the court identified the following marital assets:

> The Court ... finds that the marital estate consists of the following: the marital home located at 102 Park Court Goodlettsville, Tennessee, which has a fair market value of $242,000.00 and a debt as of March 2, 2004 of $147,586.00 with equity of $94,404.00. ... The Court finds that the Bank of America checking account in the Wife's name has a value to the marital estate of $562.85. The Court finds that the Bank of America Money Market Savings account in the Wife's name had a value of $17,355.61 on March 17, 2000 and as of February 18, 2004 has a value of $8,270.63. The Court finds that the marital estate value in the said Money Market Account is $8,270.63. The Court finds that the difference therein should be allowed to the wife as expenditures for herself and the parties' two (2) minor daughters. The Court further finds that the Bank of America SEP IRA in the name of the Wife formerly had a value of $6,861.59 on March 31, 2000 and as of December 31, 2003 had a value of $2,687.07 and that for the purpose of the marital estate, the value is $2,687.07. The Court finds that the Fidelity Investments account in the name of Anita L. Johnson had a value of $203,052.32 on April17, 2000 and as of January 15, 2004 had a value of $25,737.35. *The Court does not reduce that amount to the*

*current amount and finds that for purposes of the marital estate, the value of the Fidelity Investments Account is $203,052.32.*  The Court finds that the Vanguard Group Investments Account in the name of the wife has a marital estate value of $55,372.69.  The Court finds that the Janus Overseas funds in the name of the Wife had a value of $14,741.88 on March 31, 2000 and was closed in May, 2002.  *The court finds that for marital estate purposes that asset has a value of $14,741.88.* The Court further finds that the Janus Mercury Funds account in the name of the Wife had a value of $9,117.02 on March 31, 2000 and was closed in May, 2002. *The Court finds that that account has a value of $9,117.02 for marital estate purposed.*  The Court finds that the Tennessee Teachers Credit union account in the name of the Wife had a value of $4,125.44 on March 31, 2000 and now has a value of $417.01 as of December 31,2003. The Court allows the reduction therein as expenditures for the wife and two (2) daughters and values this account for marital estate purposes at $417.01.  The Court finds that the TIAA CREF accounts in the name of the Wife had a value of $142,887.97 on March 31, 2000 and as of December 31, 2003 has a value of $117,594.94.  The Court finds that there was a decline in value but not by expenditures made by the Wife and thus the Court values this asset for marital estate purposes at $117,594.94.  The Court finds that the John Hancock Life Insurance Policy on the life of the Wife has a net cash surrender value of $6,903.54.  The Court finds that the Jackson National Life Insurance Policy on the life of the Wife has no cash value for marital estate purposes.  The Court finds that the Paul Revere Disability policy on the Wife paying $4,000.00 per month maximum disability benefit has no cash value for marital estate purposes.  The Court further finds that the Amsouth Added Advantage checking account in the name of the Husband has a value of $4,889.53 for marital estate purposes.  The Court finds that the NBA bank account in the name of the Husband had a value of $2,188.21 on March 15, 2000 and was closed in May, 2002.  It has no value for marital estate purposes, the account being used for the Husband's reasonable expenses.  The Court finds that the Firstar Investment Services checking account in the name of the Husband had a value of $64,497.07 on March 31, 2000 and was closed on May 31, 2001. *The Court finds that for marital estate purposes this account has a value of $64,497.07.*  The Court finds that the AmSouth Primary Savings Account in the name of the Husband has a value of $1,001 .01 for marital estate purposes.  The Court finds that the Thrift Savings Plan (VA Retirement Plan) in the name of the Husband has a value of $177.62 for marital estate purposes.  The Court finds that the Fidelity Investments Vanderbilt Retirement plan in the name of the Husband has a value of $43, 156.23 for marital estate purposes.  The Court finds that the John Hancock Funds in the name of the Husband has a value of $942.33 for marital estate purposes.  The Court finds that the John Hancock IRA in the name of the Husband has a value of $11,108.37 for marital estate purposes.  The Court finds that the John Hancock Life Insurance on the Life of the Husband has a cash surrender value of $15,584.70 for marital estate purposes.  The Court finds that the John Hancock Life Insurance Flexible Variable Policy on his life has a cash surrender value of $12,190.54 for

marital estate purposes. The Court finds that the UNUM Provident Life and Accident Disability Insurance on the Husband has no such cash value for marital estate purposes.

(Emphasis added.)

The wife challenges the valuation of several of the accounts in her name as of March 2000, rather than as of a date as near as possible to the final hearing pursuant to the statute . *See* Tenn. Code Ann. § 36-4-121 (b)(1)(2001). For his part, the husband argues that since the wife had dissipated these assets without providing a proper accounting, the trial court acted well within its discretion in valuing certain property as of the date the divorce complaint was filed. The valuation and distribution of the marital estate rest within the sound discretion of the trial court. *See Ingram v. Ingram,* 721 S.W.2d 262, 264 (Tenn.Ct.App.1986). The court's decisions in this regard, especially in matters involving the credibility of witnesses, should not be overturned absent an abuse of that discretion.

> Courts dividing a marital estate are not required to apply the statutory factors mechanically. *Batson v. Batson,* 769 S.W.2d at 859. The parties are entitled to an equitable division of their marital property, not an equal one, *Thompson v. Thompson,* 797 S.W.2d 599, 604 (Tenn.Ct.App.1990), or one that is mathematically precise. All that Tenn.Code Ann. § 36-4-121 requires is essential fairness in light of the facts of the case.
>
> Essential fairness is promoted by using valuation and distribution procedures that are straightforward and easily applied.

*Kendrick v. Kendrick,* 902 S.W.2d 918, 930 (Tenn.Ct.App. 1994).

A full reading of the order in conjunction with the entire record before us suggests dissipation of assets on both sides of the marital estate's ledger. The only infirmity in the Decree may rest with the method employed by the trial court to address that dissipation. In the four instances cited by the wife on appeal, as well as one instance on the part of the husband's share, the trial court chose to value marital accounts as of a date as close as possible to the date the divorce complaint was first filed. The mechanically precise way of valuation and distribution would be to value all property as of a date as close as possible to the date of the hearing and then to divide that property in accordance with the ratio found by the trial court to represent the parties' respective marital shares of debt and assets. Separate and apart from that "current" valuation should be the determination of the amount of any assets dissipated by the parties in the interim between the filing of divorce and the final hearing. At the discretion of the trial court, the amounts could be applied to 'balance the ledger' by decreasing the offending spouse's current share or increasing the non-offending spouse's share. Although the decree entered by the trial court is innovative, it is nevertheless a straightforward attempt to address the dissipation in the simplest manner given the particular facts involved in this controversy. *See generally Flannary v Flannary*, 121 S.W.3d 647 (Tenn.2003). The decree of the

trial court fully addresses the apparent dissipation of the marital assets. The record substantiates the trial court's actions, and we cannot find an abuse of the trial court's discretion which would warrant reversal.

**Alimony**

As with the valuation of the estate, the trial court has broad discretion to determine the appropriate type of alimony to award. *See Crabtree v. Crabtree,* 16 SW.3d 356, 359 (Tenn. 2000); *see also Hanover v. Hanover,* 775 S.W.2d 612, 615 (Tenn. Ct. App. 1989). Permanent alimony is disfavored under the statute absent a specific finding that rehabilitation is not feasible.

> The trial court is assigned the responsibility and the discretion to fashion an award that is appropriate under the circumstances of each case. T.C.A. § 36-5-101. The circumstances of the parties as found by the trial court, particularly the potential for rehabilitation of one who is economically disadvantaged, rather than the particulars of the award, determine if the award is subject to modification.
>
> The statute reflects an obvious legislative policy that, if possible, the dependency of one ex-spouse on the other be eliminated and both parties be relieved of the impediments incident to the dissolved marriage, and that an ex-spouse be adjudged permanently dependent upon the other only when the court granting the divorce finds that economic rehabilitation is not feasible and long-term support is necessary.

*Self v. Self,* 861 S.W.2d 360, 361 (Tenn. 1993).

In June 2000, the wife was diagnosed with systemic lupus erythemetosus. At that time, according to the medical records and the wife's own testimony, the disease did not affect her ability to work in any way other than the increased stress normally engendered by a diagnosis of this chronic and sometimes fatal disorder. The wife eventually took a leave of absence from Metro Nashville General Hospital and Meharry Medical College, where she had been working prior to the divorce. She did not cite the lupus diagnosis as a reason for the request, despite having notified Meharry of the diagnosis. The record reveals that her employer had received certain complaints about the wife from students and faculty at the college. Though the nature and merit of these complaints are not at issue in the instant case, the requests for leave reference these complaints (and the stress caused by them) as reasons for the leave. A leave of absence was granted in August of 2000. The wife returned to work in December of 2000, and continued there until her contract term ended June 30, 2001. Her employer chose not to renew the contract. The wife has remained unemployed since that date.

The wife asserts that her lupus diagnosis renders her unable to be rehabilitated. She argues that increased flares, or episodes of symptomatic pleuritic pain, numbness in the extremities and fatigue, so interfere with her ability to work that she can no longer pursue her chosen position as a

board certified anesthesiologist. In determining the amount and type of award, the statute makes clear that a chronic disease is but one of many factors to consider.

(I) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so;  and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121 (2005).

The record reveals no expert testimony concerning any constant episodes so extreme as to interfere with work.  We have only the testimony of Dr. Anita Louise Johnson-Melvin herself– testimony which the trial court repeatedly found to lack credibility.  The testimony of the wife's expert, Dr. John Johnson, the rheumatologist to whom the wife was referred for evaluation and treatment prior to July 2003, shows that the course and frequency of lupus flares was unpredictable.  Nevertheless,  he characterized her disease management as excellent despite her complaints related to Raynaud's syndrome, a numbing and bluing of the extremities due to underoxygenated blood flow.  He wrote letters on the wife's behalf to her employer stating that she was capable of continuing her profession at the time.

Dr. John Johnson provided testimony of the severity of lupus symptoms in this particular patient.  His testimony shows that the disease has not as yet rendered the wife incapable of rehabilitation.  Of paramount concern in the award of spousal support is the removal of an economically disadvantaged spouse from dependence upon the obligor spouse.  The legislature has made that concern clear:

(d)(1)(A) Spouses have traditionally strengthened the family unit through private arrangements whereby one (1) spouse focuses on nurturing the personal side of the marriage, including the care and nurturing of the children, while the other spouse focuses primarily on building the economic strength of the family unit.  This arrangement often results in economic detriment to the spouse who subordinated such spouse's own personal career for the benefit of the marriage.  It is the public policy of this state to encourage and support marriage, and to encourage family arrangements that provide for the rearing of healthy and productive children who will become healthy and productive citizens of our state.

* * *

(C) It is the intent of the general assembly that a spouse who is economically disadvantaged relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance.  To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to

be available to the other spouse, considering the relevant statutory factors and the equities between the parties. Where there is relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection (d), the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). An award of periodic alimony may be made either in addition to a rehabilitation award, where a spouse may be partially rehabilitated as defined in this subdivision (d)(1)(C), or instead of a rehabilitation award, where rehabilitation is not feasible. When appropriate, the court may also award transitional alimony as provided in subdivision (d)(1)(D).

Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony *in solido*, periodic alimony, and transitional alimony. An award of rehabilitative, temporary support and maintenance shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of a substantial and material change in circumstances. Rehabilitative support and maintenance shall terminate upon the death of the recipient. Such support and maintenance shall also terminate upon the death of the payor unless otherwise specifically stated. The recipient of the support and maintenance shall have the burden of proving that all reasonable efforts at rehabilitation have been made and have been unsuccessful.

Tenn. Code Ann. §36-5-101(d)(1)(A);(C)(Supp. 2004).

No such dependence appears in this case. While a discrepancy existed during the marriage as to the parties' earning capacity, that discrepancy favored the wife. She was board certified in anesthesiology prior to the divorce and remains so now. The stress engendered by this and other conflicts notwithstanding, the wife has not sought any disability status. The statutory factors were properly considered by the trial court, and we find no abuse of discretion in the application of those factors.

**Modification of *Pendente Lite* Child Support**

Both parties raise issues on appeal concerning the trial court's post judgment order regarding child support. The wife challenges the trial court's refusal to adjust the *pendente lite* award upward to account for an increase in the husband's income immediately after the entry of the *pendente lite* award. On April 19, 2002, the trial court heard proof concerning the support of the children *pendente lite*, after which the court entered its order finding in pertinent part,

that the Father is not willfully underemployed, and that he is trying to become Board Certified as a surgeon. The Court further finds that based upon his current income, he should pay child support in accordance with the Tennessee Child Support Guidelines in the amount of Nine Hundred Fifty-One ($951.00) Dollars per month.

-8-

The Court further finds that there should be an upward deviation in child support to the extent of one-half (½) the cost of tuition and fees at Goodpasture Christian School for the remainder of the current contract year, in the amount of Four Hundred ($400.00) Dollars per month, so that he should pay total child support per month to the Wife in the amount of One Thousand Three Hundred Fifty-One ($1,351.00) Dollars, commencing on May 2, 2002 and payable on the second (2nd) day of the month thereafter. The Court further finds that in the event the parties do not mutually agree to re-enroll their two (2) minor children at Goodpasture Christian School or some other private school for the academic year 2002-2003, then the child support shall be in the amount of Nine Hundred Fifty-One ($951.00) Dollars per month. So long as the children attend private school and the Husband pays one-half (½) thereof in accordance with this Order, the Wife shall pay the remainder and shall make payments directly to the private school.

Subsequent to the entry of that order, the husband obtained board certification. Immediately after the order was entered, the husband's income substantially increased. However, the first motion to increase child support to reflect that increase was filed in January of 2004. This motion represents the first of two motions seeking an increase from $951 to $3,200 per month, and arguing that the husband misled the wife and the trial court during the *pendente lite* hearing as to his annual income. The trial court entered an order on March 10, 2004, reserving the consideration of the motion "upon submission, within fourteen (14) days of the Husband's sworn Income and Expense Statement and any argument in writing which the Husband wishes the Court to consider in this regard." According to the wife's Brief, the trial court also entered an order increasing the support award to $3,200. Although the technical record contains no such order, the wife's later-filed Motion for *Pendente Lite* Relief references an additional order entered on March 10, 2004, which contained the requested increase, but made that increase effective as of the date of the later order rather than May 2002, the date of the original award. After the Decree of Divorce was entered, wife renewed her challenge to the *pendente lite* order, raising again the specter of malfeasance on the husband's part. The wife argued before the trial court, as she argues before this Court, that the Husband's refusal to comply with discovery requests misled the trial court and the wife as to the true amount of his 2002 annual income. The record reveals, and the husband does not deny, that within a month after the April 19, 2002 hearing, the husband's income increased significantly. The transcript is instructive as well. Referring to the lengthy pre-trial proceedings in testimony before the court, the husband gave the following testimony:

Q. And with that divorce complaint, we filed what are called interrogatories and request[s] for production of documents; you have become familiar with those over the last several years, haven't you?
A. Quite, thank you.
Q. And it took three-and-a-half years to get your wife's answers to that; is that correct?
A. That is correct.

Upon cross-examination, the husband testified that responses to the wife's discovery requests were conveyed "roughly" around September 2003. The first motion presented to the court in an attempt to facilitate the wife's discovery of financial records was in March of 2004. The alleged malfeasance is not substantiated by the record.

The record shows that the delay in discovering the husband's income was due to *both* parties' uncooperative behavior in discovery over the three and one-half years this case was pending prior to trial. While the transcript and exhibits show an increase in the husband's income after the entry of the order, the record reveals no attempt by the husband to conceal this increase. In addition, the trial court addressed this increase at its first opportunity-- the March 10, 2004, order increasing child support to $3,200 per month. Wife argues, and there is no dispute, that the *pendente lite* order was not final prior to the entry of the decree, and therefore could be modified, as the trial court did in ordering the increased support from May of 2002 through March of 2004. *See Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn.Ct.App. 1983) (a *pendente lite* order is not final absent determination of finality by trial court consistent with Tenn.R.Civ.P.54.02); *compare* Tenn. Code Ann. 36-5-101(a)(5) (judgment as to child support is final judgment and not retroactively modifiable prior to the date such support is sought and notice is conveyed to the obligor).

The flashpoint of the instant controversy is the decision of the trial court to amend the May 2002 order from the support percentage for a single child to reflect the 32% flat rate for the support of two children. The wife argues that the trial court erred in failing to apply that 32% rate to the income as revealed in the 2004 proceedings. For his part, the husband argues that the trial court lacked jurisdiction to enter the amending order after the wife had filed her notice of appeal. The Decree of Divorce was entered August 6, 2004. The wife filed her notice of appeal 19 days later on August 25. The husband filed his Motion to Alter or Amend on August 31,and the wife filed a motion to alter or amend on September 2. The procedural posture of this appeal presents the question of whether the trial court has jurisdiction to consider the timely post-trial motions, or whether, as this Court stated in *Spann v. Abraham*, 36 S.W.3d 452 (Tenn. Ct. App. 1999), the notice of appeal divested the trial court of jurisdiction to consider the motions. In *Spann* we held that once the notice of appeal had been filed, a trial court did not err in denying a post judgment motion filed after the timely notice of appeal due to lack of jurisdiction. In *Spann*, however, we held that the trial court could, consistent with Tennessee Rule of Civil Procedure 60.01, correct clerical errors in its judgment *sua sponte*. While our current Tennessee Rule of Appellate Procedure 4(e), effective July 1, 2005, clearly allows a trial court to retain jurisdiction while motions to alter or amend the judgment, filed within 30 days of said judgment, are pending; the rule as amended in 2005 does not address the current controversy whose existence predates it. The overarching principle in the rule is that a case should not be pending in two courts at once. Yet both parties filed motions to alter or amend after the notice of appeal. Tennessee Rule of Civil Procedure 59.04 allows the trial court to amend its own orders *sua sponte* within the same 30-day period in which the parties could file motions pursuant to Tennessee Rules of Civil Procedure Rule 59.04. By correcting the *pendente lite award* to account for the 32% support rate for two children, the trial court merely corrected a clerical error. The trial court was well within its discretion in amending the *pendente lite* order, and we will not disturb that portion of the trial court's decision on appeal.

**Attorneys Fees and Discretionary Costs**

The custodial spouse in a divorce case "may recover from the other spouse reasonable attorney's fees incurred" in any proceeding involving the establishment or enforcement of that obligation. *See* Tenn. Code Ann. §36-5-103. As with the wife's other issues on appeal, the decision to award attorneys fees and the amount of those fees awarded is a matter resting within the sound discretion of the trial court.

> In a divorce case, an award of attorney's fees is treated as an award of alimony *in solido. Kinard v. Kinard,* 986 S.W.2d 220, 235 (Tenn.Ct.App.1998); *Herrera v. Herrera,* 944 S.W.2d 379, 390 (Tenn.Ct.App.1996). Thus, when determining whether to award attorney's fees, the trial court is required to consider the same factors used when considering a request for alimony. *Kincaid v. Kincaid,* 912 S.W.2d 140, 144 (Tenn.Ct.App.1995). As with alimony, need is the critical factor to be considered by the court when deciding whether to award attorney's fees. *Herrera,* 944 S.W.2d at 390. An award of attorney's fees is proper when one spouse is disadvantaged and does not have sufficient resources with which to pay attorney's fees. *Id.* The question of whether to award attorney's fees, and the amount thereof, are largely left within the discretion of the trial court and will not be disturbed on appeal unless the trial court clearly abused that discretion. *Aaron v. Aaron,* 909 S.W.2d 408, 411 (Tenn.1995).

*Eldridge v. Eldridge,* 137 S.W.3d 1, 24-25 (Tenn.Ct.App. 2002).

Wife bases her claim to attorney fees on the uncertainty of employment in the future. As with many of the issues raised in this appeal, the trial court's determination hinges on the wife's credibility. The court specifically found that the wife was not credible. In response to the wife's motion to alter or amend which requested "specific findings of fact as to why the court stated that [the wife] lacked credibility," the court cited specific instances where the court found the wife's credibility lacking.

With no citation of additional authority, the wife challenges the trial court's determination of her credibility as to her ability to work, and the ultimate decision that each party be responsible for that party's costs incurred in this divorce which fails only in duration to match the strife of the marriage. We find no abuse of discretion in either determination.

The husband's challenges to the court's exercise of discretion are likewise subject to the same discretionary standard. He takes issue with the post-trial order allowing a credit for $38,375 in mortgage payments which the husband was required to make pursuant to the May 2002 *pendente lite* support order. He urges that the credit constitutes a retroactive modification. Since we have held that the *pendente lite* order was interlocutory in nature and subject to modification we find no err in the subsequent order. While we recognize that according to the husband's presentation of the facts,

child support and alimony obligation may exceed his ability to pay, the trial court properly exercised its role as fact finder, and we find no abuse of discretion in the award. *See* Tenn. R. App. P. 13(d).

So much of this case is a swearing contest between Plaintiff and Defendant. The trial court repeatedly questioned the credibility of Anita Louise Johnson-Melvin. Such credibility determinations by the trial court, when the merits of the case rests so firmly on credibility, are nearly insurmountable on appeal. *Mitchell v. Archibald*, 971 S.W.2d 25, 29 (Tenn.Ct.App.1998).

The judgment of the trial court is affirmed. Costs of the appeal are taxed to Appellant.

_____
WILLIAM B. CAIN, JUDGE