# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 1, 2025

## IN RE ZAE'ALEI R. ET AL.

**Appeal from the Circuit Court for Montgomery County**
**No. CC-22-CV-2245      Ashleigh L. Travis, Judge**

_____

**No. M2024-01312-COA-R3-PT**

_____

This is a termination of parental rights appeal. The trial court found that two statutory grounds existed to terminate mother's parental rights to the two minor children: abandonment by failure to visit or support and persistence of conditions. The trial court found that three statutory grounds existed to terminate father's parental rights to the minor children: abandonment by failure to visit or support, persistence of conditions, and abandonment due to father's confinement of ten or more years. The trial court then concluded that termination was in the children's best interests. We reverse the trial court's findings on the grounds of abandonment by failure to visit or support. We affirm the remainder of the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part**

VALERIE L. SMITH, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

John D. Parker, Clarksville, Tennessee, for the appellant, Tiffany G.

Taylor V. Hutson, Clarksville, Tennessee, for the appellant, David R.

Lynn Newcomb, Ashland City, Tennessee, for the appellees, Sondra D. and Bridget D.

## OPINION

### I.      BACKGROUND & PROCEDURAL HISTORY

Zae'Alei R. ("ZRR") was born in January 2017, and Zariyah R. ("ZBR") was born

1

in June 2019, (collectively, the "Children"). Their biological parents, Tiffany G. ("Mother") and David R. ("Father") (collectively "Appellants"), were unmarried during the births of both Children. On August 14, 2017, the Tennessee Department of Children's Services ("DCS") received a referral from ZRR's pediatrician's office that alleged ZRR was abused based upon injuries she sustained. DCS received the referral after Appellants took ZRR to the pediatrician on August 9, 2017, with an injury to her arm and "reported to the pediatrician that the child's arm was caught between the bars in her crib three days prior." Appellants stated that when ZRR was previously x-rayed during an emergency room visit on August 6, 2017, the results did not show an injury. However, when the emergency department was contacted, it did not have a record of the child receiving treatment as reported by Appellants. When ZRR did receive an x-ray, the results "indicated that the child had a fracture in her elbow, and medical staff determined that the parents' story may not be consistent with the injury that was seen." Appellants informed DCS that on August 5, 2017, they heard noises from ZRR's room when she was supposed to be asleep. When Father entered the room, he found ZRR with an arm and a leg stuck between the railings of her crib. Father reported that ZRR's arm was "bent in a way it shouldn't be" when he found her. Further tests at Vanderbilt Children's Hospital revealed that ZRR had "multiple fractures that were not consistent with accidental trauma."

On August 16, 2017, DCS filed a petition for temporary legal custody in the Wilson County Juvenile Court alleging that ZRR was dependent and neglected. The petition further alleged that ZRR was severely abused "based upon the multiple broken bones found on the child that were diagnosed as being caused by non-accidental trauma" while in Appellants' care. Based upon a no-contest plea, the court found that ZRR was a victim of a significant injury, but since causation was "unclear," the court made a finding of dependency and neglect rather than severe abuse.[1] The court further found that this significant injury occurred while ZRR was in the custody and care of Appellants. In February of 2019, the juvenile court granted custody of ZRR to Mother's sister, Bridget D., and her wife, Sondra D. (collectively "Appellees"). Appellees have maintained custody of ZRR since the finding of dependency and neglect by the juvenile court in February of 2019.

Shortly after ZBR's birth in June of 2019, DCS again became involved with Appellants. In August of 2019, DCS filed a dependency and neglect action against Appellants in the Sumner County Juvenile Court after Mother tested positive for cocaine while caring for ZBR. The court removed ZBR from Appellants' care and placed her in the

---

[1] The Wilson County Juvenile Court included the following in its Order:

This Court finds that [Appellants], by entering a no-contest plea, acknowledge that the proof, if presented, would have been sufficient to show by clear and convincing evidence that [ZRR] was a victim of traumatic injury that occurred during the period of time that she was in their custody and control. The result is a finding through clear and convincing evidence that [ZRR] is a victim of significant injury. However, since causation is unclear and has not been proven, the finding this Court makes is one of dependency and neglect.

state's custody until care was transferred through a kinship placement. ZBR was ultimately placed with Appellees by agreement of all parties.

In August and September of 2019, Mother and Father robbed two banks. Mother later stated that she committed these crimes in an effort to avoid eviction and acknowledged that she was aware that her conduct could result in incarceration. Appellants were arrested in September of 2019 on federal criminal charges related to those robberies. Mother ultimately pled guilty to two bank robberies under 18 United States Code section 2113(a) and received a five-year prison sentence. Father also pled guilty to two bank robberies under 18 United States Code section 2113(a) and received an 11.6-year prison sentence. Mother remained incarcerated for slightly more than three years and was released on supervised probation in October of 2023. Father remains incarcerated.[2]

In the fall of 2019, ZBR was placed in foster care through DCS while Appellants were awaiting the resolution of their criminal charges. Appellees assumed physical custody of ZBR in July of 2020. In September of 2020, the Sumner County Juvenile Court transferred legal custody of ZBR to Appellees, with the consent of Mother and Father, who were incarcerated and acting through counsel. From that point forward, both Children have been in the care of Appellees.

The record reflects that both Children have medical needs. ZRR suffers from epileptic seizures, Williams Syndrome, disabilities relating to being born without a rectum, and disabilities relating to the injuries caused by the non-accidental trauma sustained while in the care of Appellants. ZBR also suffers from Williams Syndrome and feeding issues, such that she requires the use of a gravity feeder. The Children require a stay-at-home caretaker or a school nurse to aid in their day-to-day care. The trial court noted that Appellees have aptly managed the Children's medical and developmental needs in addition to providing a stable home environment.

Appellants' contact with the Children after 2019 was limited. Appellee Sondra D. testified that, even before their 2019 incarceration, Appellants did not exercise any visitation with ZRR or provide financial support for either Child. ZRR lived with Appellees for over a year with no visits from Appellants before their arrests. While incarcerated, Mother participated in video visitation with ZBR approximately twice per month. However, these video visits ceased in early 2022 after discussions between Appellees and Mother about signing adoption consent forms.

On November 8, 2022, Appellees filed a petition in the Montgomery County Circuit Court to terminate the parental rights of Appellants. The petition alleged multiple grounds for termination under Tennessee Code Annotated section 36-1-113. First, Appellees

---

[2] At trial, Father emphasized that he could possibly serve less time than his actual sentence. Father testified that he could be released in "a little under four years."

asserted that Appellants had abandoned the Children pursuant to Tennessee Code Annotated section 36-1-113(g)(1). The petition cited Appellants' lack of visitation and failure to provide support for the Children during the three-to-four-month period[3] prior to their September of 2019 incarceration. Second, the petition alleged persistence of the conditions that led to the Children's removal from Appellants' custody pursuant to Tennessee Code Annotated section 36-1-113(g)(3). Appellees averred that the problems that existed in Appellants' home—including instability that was detrimental to the Children's welfare, criminal activity, and Mother's substance abuse—had not been remedied, and that continuation of the parent-child relationship greatly diminished the Children's chances of a safe, stable, and permanent home. As a third ground, applicable to Father only, the petition alleged that Father's incarceration constituted abandonment under Tennessee Code Annotated section 36-1-113(g)(6), in that Father was sentenced to a term of ten or more years and the Children were under eight years old at the time of his sentencing. Finally, the petition asserted that termination of both Mother's and Father's parental rights was in the Children's best interests, highlighting that Appellees had been the primary caregivers for the vast majority of the Children's lives.

Mother and Father were served with the termination petition while incarcerated in federal prison. The trial court appointed counsel to represent each parent and appointed a guardian *ad litem* to represent the Children's interests. The trial in this matter was held on August 14, 2024. At the time of trial, Mother had been released from custody on supervised release. Father remained incarcerated.

At trial, Appellees testified about Appellants' lack of involvement with the Children. Sondra D. testified that ZRR had lived with Appellees since she was two years old, and that ZBR had been placed with Appellees since July of 2020 when she was just over one year old. Sondra D. testified that after ZBR's removal from Appellants' home, Appellants had no in-person visits with and sent no support for the benefit of ZBR. Appellees further described the Children's medical challenges, including seizures and the need for feeding tubes, noting that Appellees have addressed those needs while Appellants have been unable to do so.

Mother testified that in 2020, while she was incarcerated, she agreed to place ZBR in Appellees' custody. Mother conceded that she had not seen the Children since 2019, aside from video calls with ZBR, and that she had not provided financial support for them due to being incarcerated and unemployed during that time. Mother testified that while in prison, she took advantage of numerous rehabilitation programs: she completed a residential drug abuse treatment program, obtained her GED, and earned certificates in courses on parenting, relationships, and coping with trauma.

---

[3] We note that the three-month statutory period referenced by the parties and the trial court throughout the trial proceedings and this appeal is not applicable to the facts of this case. This issue is discussed in more detail *infra*.

Father testified via video conference during the trial. He acknowledged that from May of 2019 to September of 2019, he did not provide support outside of food and gifts during visitation. When asked whether he visited with the Children from May of 2019 to September of 2019, he acknowledged that he did not visit with ZRR but stated that ZBR was in his and Mother's care before the incarceration. Since his incarceration, Father has also earned his GED and completed anger management classes.

At the close of Appellees' proof, both Appellants moved for the trial court to enter a directed verdict, arguing that Appellees had failed to prove any of the alleged grounds for termination by clear and convincing evidence. The trial court took the matter under advisement but ultimately denied the motion.

On August 26, 2024, the trial court entered its written order terminating Mother's and Father's parental rights to both ZRR and ZBR. In that order, the trial court first found that Mother and Father abandoned the Children pursuant to Tennessee Code Annotated section 36-1-113(g)(1), in that Appellants had willfully failed to visit or support the Children for an extended period and had engaged in conduct evidencing a wanton disregard for the Children's welfare. The trial court noted that neither Appellant made any attempt to maintain a relationship with the Children after removal, and that Appellants' criminal behavior leading to their incarceration demonstrated disregard for the Children's well-being. Second, the court found that persistent conditions pursuant to Tennessee Code Annotated section 36-1-113(g)(3) existed—specifically, that the conditions that led to the Children's removal from the parents, including the unsafe environment and instability in the parents' home, persisted. As a third ground applicable to Father only, the trial court found that Father's prison sentence of 11.6 years triggered abandonment by incarceration under Tennessee Code Annotated section 36-1-113(g)(6), given that the sentence exceeds ten years and both Children were under the age of eight when Father was sentenced.

Having found that all of the grounds alleged were proven by clear and convincing evidence, the trial court then found that it was in the best interest of both Children for Mother's and Father's parental rights to be terminated. The court's order included detailed findings on the statutory best interest factors. The trial court found that the Children have a critical need for stability and continuity. The trial court observed that neither parent had demonstrated the ability to provide a safe, stable home or to meet the Children's medical needs, whereas Appellees had been meeting all of the Children's needs for most of their lives. The court also found that the Children have formed a strong, healthy bond with Appellees, whereas Mother and Father have not maintained regular contact or meaningful relationships with the Children. The trial court determined that clear and convincing evidence established both the existence of statutory grounds for termination and that termination of Mother's and Father's rights is in the Children's best interest.

Mother filed a timely notice of appeal on August 27, 2024. Father also filed a timely

5

notice of appeal with this Court on September 12, 2024.

## II.    ISSUES PRESENTED

Appellants present the following issues for review on appeal:

1. Whether the trial court erred in denying the motion for directed verdict raised by Appellants.
2. Whether the trial court erred in finding that there was clear and convincing evidence that Appellants abandoned the Children by willfully and voluntarily failing to visit or support the Children pursuant to Tennessee Code Annotated section 36-1-113(g)(1).
3. Whether the trial court erred by finding clear and convincing evidence that conditions persisted that prevented Appellants from assuming legal and physical custody of the Children pursuant to Tennessee Code Annotated section 36-1-113(g)(3).
4. Whether the trial court erred in finding that there was clear and convincing evidence that the Father had abandoned the Children due to his sentence of confinement for a period of ten or more years pursuant to Tennessee Code Annotated section 36-1-113(g)(6).
5. Whether the trial court erred by finding clear and convincing evidence that it is in the Children's best interests to terminate Appellants' parental rights pursuant to Tennessee Code Annotated section 36-1-113(i)(1).

## III.    LAW AND ANALYSIS

1. <u>Directed Verdict</u>

Appellants argue on appeal that the trial court erred by denying their motion for directed verdict. They assert that Appellees' evidence was insufficient to establish the alleged grounds by clear and convincing evidence. Appellees contend that they met their burden in proving that Appellants failed to support the Children in the three-to-four months immediately preceding their incarceration. The trial court denied the motion finding that Appellees established that Appellants failed to support either child and noted that the burden then shifted to Appellants to prove that they did provide support.

As a preliminary matter, counsel for Mother, who initially raised the issue during trial, notes in his brief that "the proper motion would have been a Motion for Involuntary Dismissal since this matter was a bench trial pursuant to Tennessee Rules of Civil Procedure 41.02." Rule 41.02(2) of the Tennessee Rules of Civil Procedure motion for involuntary dismissal differs from a Rule 50 motion for a directed verdict. The procedural difference is that motions for directed verdicts have no place in bench trials, while Rule

6

41.02(2) motions for involuntary dismissal have no place in jury trials. *Cunningham v. Shelton Sec. Serv., Inc.*, 46 S.W.3d 131, 135 n.1 (Tenn. 2001); *City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d 734, 740 (Tenn. 1977); *Scott v. Pulley*, 705 S.W.2d 666, 672 (Tenn. Ct. App. 1985).

The analysis varies depending on the type of motion. A Rule 50 motion for directed verdict asks whether the plaintiff has presented sufficient evidence to create an issue of fact for the jury to decide. *Spann v. Abraham,* 36 S.W.3d 452, 462 (Tenn. Ct. App. 1999). Motions for involuntary dismissal pursuant to Rule 41.02(2) do not raise questions of law but rather challenge the sufficiency of the plaintiff's proof. *Smith v. Inman Realty Co.,* 846 S.W.2d 819, 821 (Tenn. Ct. App. 1992). Since a motion for directed verdict pursuant to Rule 50 is not the appropriate motion for a bench trial, we will construe the oral motion for directed verdict as a motion for involuntary dismissal pursuant to Rule 41.02(2).

This Court uses the Tennessee Rules of Appellate Procedure Rule 13 standard to review a trial court's disposition of a Rule 41.02(2) motion because the trial court uses the same reasoning to dispose of the motion that it would use to make a final decision at the close of all the evidence. *College Grove Water Util. Dist. v. Bellenfant,* 670 S.W.2d 229, 231 (Tenn. Ct. App. 1984). Accordingly, we review the record on appeal *de novo* with a presumption that the trial court's findings are correct. On appeal, we will affirm the trial court's decision unless the evidence preponderates against the trial court's factual determinations or the trial court has committed an error of law affecting the outcome of the case. *Hass v. Knighton,* 676 S.W.2d 554, 555 (Tenn. 1984). We defer to the trial court's assessment of the evidence because the trial court is in a better position to evaluate the credibility of the witnesses. *Kelly v. Kelly*, 445 S.W.3d 685, 692-93 (Tenn. 2014).

When considering a motion for involuntary dismissal, "the trial court 'must impartially weigh the evidence as though it were making findings of fact and conclusions of law after all of the evidence has been presented.'" *In re Rosylyn W.*, No. E-2019-01838-COA-R3-PT, 2020 WL 6053523, *9 (Tenn. Ct. App. Oct. 13, 2020) (quoting *Burton v. Warren Co-Op.*, 129 S.W. 513, 520 (Tenn. Ct. App. 2022)). "The trial court should dismiss the plaintiff's action if the court finds that based on the law and evidence presented, the plaintiff has failed to demonstrate a right to the relief it is seeking." *Id.* (internal quotations omitted).

As discussed below, the record contains evidence supporting at least one ground for termination of Appellants' parental rights, as well as the best interest determination. The trial court did not commit error in allowing the case to proceed beyond Appellees' proof. We therefore affirm the denial of Appellants' motion for involuntary dismissal. *See Burton*, 129 S.W.3d at 520 (affirming denial of Rule 41.02(2) motion where proof at close of plaintiff's case was sufficient and ultimate judgment was supported by the evidence).

2. Grounds for Termination

"Parents have a fundamental constitutional interest in the care and custody of their children," which is guaranteed under both the United States and Tennessee constitutions. *In re Connor B.*, 603 S.W.3d 733, 788 (Tenn. Ct. App. 2020) (quoting *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002)). This right is not absolute, however, and may be terminated if a court finds that one of the statutory grounds for termination exists and that termination is in the child's best interest. *See* Tenn. Code § 36-1-113(c) (West, Westlaw July 1, 2022 to May 4, 2023)[4]; *Santosky v. Kramer*, 455 U.S. 745 (1982); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). Statutory grounds for termination as well as a determination that termination is in the child's best interest must all be found by clear and convincing evidence, which "serves to prevent the unwarranted termination or interference with the biological parents' rights to their children." *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Clear and convincing evidence "'establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *In re Makendra E.*, No. W2015-01374-COA-R3-PT, 2016 WL 325481, at *2 (Tenn. Ct. App. Jan. 27, 2016) (alteration in original) (quoting *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004)).

In cases involving the termination of parental rights, the standard of appellate review differs slightly from general appellate review under Rule 13 of the Tennessee Rules of Appellate Procedure. The Tennessee Supreme Court has explained this heightened form of review as follows:

> To review trial court decisions, appellate courts use a . . . two-step process, to accommodate both Rule 13(d) of the Tennessee Rules of Appellate Procedure and the statutory clear and convincing standard. First, appellate courts review each of the trial court's specific factual findings de novo under Rule 13(d), presuming each finding to be correct unless the evidence preponderates against it. *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); *In re Justice A.F.*, [No. W2011-02520-COA-R3-PT,] 2012 WL 4340709, at *7 [(Tenn. Ct. App. Sept. 24, 2012)]. When a trial court's factual finding is based on its assessment of a witness's credibility, appellate courts afford great weight to that determination and will not reverse it absent clear evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re Justice A.F.*, 2012 WL 4340709, at *7 (citing *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005)).

---

[4] Throughout this Opinion, citations to Tennessee Code Annotated section 36-1-113 refer to the version that was effective on the date the termination petition was filed in this case, which was November 8, 2022. *In re Zakary O.*, No. E2022-01062-COA-R3-PT, 2023 WL 5215385, at *4, n.6 (Tenn. Ct. App. Aug. 5, 2023) (explaining that a court will "cite to the statutes that were in place at the time the termination petition was filed").

Second, appellate courts determine whether the combination of all the individual underlying facts, in the aggregate, constitutes clear and convincing evidence. *In re Taylor B.W.*, 397 S.W.3d at 112; *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re Justice A.F.*, 2012 WL 4340709, at *7. Whether the aggregate of the individual facts, either as found by the trial court or supported by a preponderance of the evidence, amounts to clear and convincing evidence is a question of law, subject to de novo review with no presumption of correctness. *See In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *see also In re Samaria S.*, 347 S.W.3d 188, 200 (Tenn. Ct. App. 2011). As usual, the appellate court reviews all other conclusions of law de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d [240,] 246 [Tenn. 2010].

*In re Markus E.*, 671 S.W.3d 437, 457 (Tenn. 2023). Those seeking to terminate parental rights must prove the elements of their case by clear and convincing evidence, which includes the statutory grounds and the best interest of the child factors. *In re Carrington H.*, 483 S.W.3d 507, 523 (Tenn. 2016). Because of the nature of the consequences, proceedings to terminate parental rights require an individualized determination. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999).

    (a) <u>Abandonment by Willful Failure to Visit or Provide Support</u>

       Appellants first argue on appeal that the trial court erred by finding clear and convincing evidence that Appellants abandoned the Children. Specifically, Appellants contend that any failure to visit or provide support for the Children was not willful because Appellants' financial instability prevented support and the incarceration prevented visitation. The trial court found that Appellants failed to visit or provide support, other than token support, to ZRR or ZBR during the three-to-four-month period prior to their incarceration.

       Parental rights may be terminated for abandonment. Tenn. Code § 36-1-113(g)(1) (West, Westlaw July 1, 2022 to May 4, 2023). Relevant to this case, the definition of the term "abandonment" includes circumstances in which:

    (iv) A parent or guardian is incarcerated at the time of the filing of a proceeding, pleading, petition, or amended petition to terminate the parental rights of the parent or guardian of the child who is the subject of the petition for termination of parental rights or adoption, or a parent or guardian has been incarcerated during all or part of the four (4) consecutive months immediately preceding the filing of the action and has:

    (a) Failed to visit, has failed to support, or has failed to make reasonable

payments toward the support of the child for four (4) consecutive months immediately preceding the parent's or guardian's incarceration;

(b) Failed to visit, has failed to support, or has failed to make reasonable payments toward the support of the child during an aggregation of the first one hundred twenty (120) days of nonincarceration immediately preceding the filing of the action; or

(c) With knowledge of the existence of the born or unborn child, engaged in conduct prior to, during, or after incarceration that exhibits a wanton disregard for the welfare of the child; or

(v) The child, as a newborn infant aged fourteen (14) days or younger was voluntarily left at a facility or in a newborn safety device by the child's mother pursuant to § 68-11-255; and, for a period of thirty (30) days after the date of voluntary delivery, the mother failed to visit or seek contact with the infant; and, for a period of thirty (30) days after notice was given under § 36-1-142(f), and no less than ninety (90) days cumulatively, the mother failed to seek contact with the infant through the department or to revoke her voluntary delivery of the infant[.]

*Id.* § 36-1-102(1)(A)(iv) (West, Westlaw July 1, 2022, to May 4, 2023).

We begin our analysis of the trial court's findings of "abandonment" by noting that several of the pleadings and briefs submitted by the parties, as well as the final judgment entered by the trial court, are riddled with misstatements and confusion regarding the dates applicable to whether Appellants abandoned the Children. As set forth above, due to Appellants' incarceration, the relevant four-month period varies from the typical timeframe of four months preceding the filing of the petition. *See* Tenn. Code § 36-1-102(1)(A)(iv) (noting that the relevant time period is four (4) consecutive months immediately preceding such parent's or guardian's incarceration) (West, Westlaw July 1, 2022 to May 4, 2023). Appellants were incarcerated on September 26, 2019. Therefore, the determinative period for ZRR and ZBR would have been four months preceding Appellants' incarceration on September 26, 2019.

In its final judgment, the trial court mistakenly employed a definition of abandonment that looked to three, rather than four, months preceding the filing of a termination petition for children under four years of age. *See id.* § 36-1-102(1)(A)(iv) (West, Westlaw effective July 1, 2024 to May 4, 2025). The court stated that "the pertinent time period . . . is four (4) months preceding September 26, 2019 for [ZRR], due to her age being over four (4) years old at the time of incarceration, and three (3) months preceding September 26, 2019 for [ZBR], due to her age being less than four (4) years old at the time of incarceration." Thus, the trial court evaluated "June 25, 2019 through September 25,

10

2019 for [ZRR] and July 25, 2019 through September 25, 2019 for [ZBR]" as the version of Tennessee Code Annotated section 36-1-102(1)(A)(iv) in effect at the time of judgment included the three and four month distinction for children under the age of four. *See id.* § 36-1-102(1)(A)(iv) (West, Westlaw July 1, 2024 to May 4, 2025). However, the petition in this case was filed in November of 2022. Under the version of Tennessee Code Annotated section 36-1-102(1)(A)(iv) that was in effect in November of 2022, the correct determinative period for both Children would be four months preceding the parents' incarceration—May 26, 2019 through September 25, 2019. *See id.* § 36-1-102(1)(A)(iv) (West, Westlaw July 1, 2022 to May 4, 2023).

As this period relates to ZBR, the child was born on June 28, 2019. Thus, ZBR was not alive for the requisite four-month period prior to Mother and Father's incarceration. As a result, we reverse the trial court's finding that Mother and Father abandoned ZBR by their failure to visit or support ZBR for four months prior to their incarceration.

Regarding ZRR, the trial court did articulate a definition of "abandonment" that included the proper lookback period—four months. However, when describing the findings that led the court to conclude that Appellees had established abandonment by clear and convincing evidence, the court stated that it evaluated Mother and Father's conduct between "June 25, 2019 through September 25, 2019." The court appears to have counted this period as being four months, rather than the three months that exist between June and September. As a result, we reverse the ground of abandonment as it relates to ZRR as well due to the lack of sufficient findings for the entire determinative period.

(b) <u>Persistence of Conditions</u>

Appellants argue that there is no proof to support the ground of persistence of conditions. They argue that the persistent conditions have to do with ZRR's injury at the time of her removal. Appellants assert that the persistent conditions pertaining to ZBR relate to Mother's drug use, which Mother has addressed since her incarceration. Appellees contend that Appellants did not remedy the conditions necessitating the Children's removal. Specifically, Appellees assert that Appellants failed to provide safe, suitable housing and the necessary care required to address the Children's medical needs. The trial court found that Appellees established the ground of persistence of conditions by clear and convincing evidence. Our analysis is as follows.

Courts may terminate a parent's rights for persistent conditions when:

(A) The child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:

11

(i)     The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;

(ii)    There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and

(iii)   The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home;

(B) The six (6) months must accrue on or before the first date the termination of parental rights petition is set to be heard[.]

Tenn. Code Ann. § 36-1-113(g)(3) (West, Westlaw July 1, 2022 to May 4, 2023). A court must determine that each of these three factors existed and that the children had been removed from the home by court order for six months in order to terminate parental rights based on this ground.

This ground focuses on the outcome of the parents' efforts at improvement, rather than the fact that the parents made the efforts. *Audrey S.*, 182 S.W.3d at 874. The purpose of the persistent conditions ground "is to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child." *In re Navada N.*, 498 S.W.3d 579, 605 (Tenn. Ct. App. 2016). Consequently, "[t]he failure to remedy the conditions which led to the removal need not be willful." *Id.* (citing *In re T.S. and M.S.*, No. M1999-01286-COA-R3-CV, 2000 WL 964775, at *6 (Tenn. Ct. App. July 13, 2000)). Even if not willful, "[a] parent's continued inability to provide fundamental care to a child . . . constitutes a condition which prevents the safe return of the child to the parent's care." *Id.* (citing *In re A.R.*, No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20 (Tenn. Ct. App. Oct. 13, 2008)).

The trial court found that the conditions underpinning the Children's removal from Appellants' custody persisted at the time of the hearing with little likelihood that the conditions would be remedied so that the Children can safely return to Appellants in the near future. ZRR was removed from Appellants in 2019 after a finding of dependency and neglect based upon the multiple broken bones caused by the non-accidental trauma. ZBR was removed in 2020 after DCS received a referral due to Mother's drug use and inability

to provide safe, suitable housing or the necessary care for her disabilities. Mother testified that after ZBR's removal, DCS "went through its regular procedures and worked up a permanency plan" for Mother to regain custody of ZBR. However, Mother further testified that she failed to participate in this permanency plan due to her incarceration.

The trial court noted that while Mother was employed, her housing situation remained unstable. Mother first lived in a halfway house, then with her own mother, and then with a co-worker. Given Mother's history of drug abuse along with her instability with housing and employment, a few months of improvement was not enough to prove to the trial court that the original issues—drug use, housing instability, and an inability to care for a special-needs child—were resolved. The trial court found that Mother did not make "a lasting lifestyle change and that she is [not] able to assume care for the [C]hildren."

There is no dispute that ZRR and ZBR were removed for at least six months from the home of Appellants by order of a court. Regarding factor (i) of Tennessee Code Annotated section 36-1-113(g)(3)(A), the trial court concluded that the conditions which led to ZRR's and ZBR's removal still persisted. The trial court further noted, in regard to factor (ii), that the length of Father's incarceration supports the finding that there is little likelihood that these conditions will be remedied at an early date so that the Children can be safely returned to Appellants' custody. As it pertains to Mother concerning factor (ii), the trial court emphasized that while Mother is employed, she cannot provide the stay-at-home or day-to-day care that the Children's medical needs require. For factor (iii), the trial court concluded that Appellants "are not able to provide a safe and suitable home and provide care for the [C]hildren to the extent that is needed to adequately address their disabilities."

Upon review of the record in this matter, we discern no error in the trial court's conclusion that clear and convincing evidence supports termination of Appellants' parental rights based on this ground.

(c) Abandonment by Incarceration

The trial court also terminated Father's parental rights to the Children pursuant to Tennessee Code Annotated section 36-1-113(g)(6)(A), which provides that parental rights may be terminated if:

> (6)(A) The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court[.]

Here, the trial court found that Father meets the criteria of Tennessee Code Annotated section 36-1-113(g)(6)(A). We agree. Father was convicted of bank robbery and

13

sentenced to 11.6 years in prison. At that time, both Children were well under the age of eight—ZRR was four years old and ZBR was two. This satisfies the statute's requirement of a sentence of ten or more years imposed while the child is under eight. The statute does not require that the parent actually serve the entire term, only that the sentence is for the requisite length. *In re Chandler M.*, No. M2013-02455-COA-R3-PT, 2014 WL 3586499, at *7 (Tenn. Ct. App. July 21, 2014). Father argues that he "may be released prior to a confinement of ten years," possibly through earning early release or other credits. While acknowledging that possibility, the trial court correctly noted that the statutory ground looks to the sentence as entered by the court. Here Father's sentence of 11.6 years was clearly ten years or more.

The length of Father's sentence is undisputed and supported by the record. It is also undisputed that ZRR and ZBR were "less than 8 years of age" at the time of Father's incarceration. As such, there is clear and convincing evidence to support the trial court's termination of Father's parental rights on this additional ground.

3. <u>Best Interest of the Child</u>

Appellants contend that the trial court erred in finding that termination of their parental rights was in the Children's best interest. Mother argues that she took advantage of numerous voluntary programs while in prison and her lifestyle is considerably better now than at the time the petition was filed. Father asserts that he has made lasting adjustments to his circumstances, conduct, and conditions by obtaining a GED and taking anger management courses while incarcerated. Appellees argue that the Children have resided outside the care of Appellants for most of their lives and Appellees have created a substantial parent-child relationship with the Children. The trial court determined that termination of Appellants' parental rights was in the best interest of the Children.

When a parent has been found to be unfit by establishment of at least one statutory ground for termination of parental rights, the interests of parent and child diverge, and the focus shifts to what is in the child's best interest. *Audrey S.*, 182 S.W.3d at 877; *see also Carrington*, 483 S.W.3d at 523 ("The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination.") (quoting *In re Angela E.*, 303 S.W.3d 240, 254 (Tenn. 2010)). Tennessee Code Annotated section 36-1-113(i) contains a nonexclusive list of best interest factors for a court to consider. The factors may include, but are not limited to:

> (A) The effect a termination of parental rights will have on the child's critical need for stability and continuity of placement throughout the child's minority;

> (B) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition;

14

(C) Whether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs;

(D) Whether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment;

(E) Whether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child;

(F) Whether the child is fearful of living in the parent's home;

(G) Whether the parent, parent's home, or others in the parent's household trigger or exacerbate the child's experience of trauma or post-traumatic symptoms;

(H) Whether the child has created a healthy parental attachment with another person or persons in the absence of the parent;

(I) Whether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage;

(J) Whether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of alcohol, controlled substances, or controlled substance analogues which may render the parent unable to consistently care for the child in a safe and stable manner;

(K) Whether the parent has taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions;

(L) Whether the department has made reasonable efforts to assist the parent in making a lasting adjustment in cases where the child is in the custody of the department;

(M) Whether the parent has demonstrated a sense of urgency in establishing

15

paternity of the child, seeking custody of the child, or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest;

(N) Whether the parent, or other person residing with or frequenting the home of the parent, has shown brutality or physical, sexual, emotional, or psychological abuse or neglect toward the child or any other child or adult;

(O) Whether the parent has ever provided safe and stable care for the child or any other child;

(P) Whether the parent has demonstrated an understanding of the basic and specific needs required for the child to thrive;

(Q) Whether the parent has demonstrated the ability and commitment to creating and maintaining a home that meets the child's basic and specific needs and in which the child can thrive;

(R) Whether the physical environment of the parent's home is healthy and safe for the child;

(S) Whether the parent has consistently provided more than token financial support for the child; and

(T) Whether the mental or emotional fitness of the parent would be detrimental to the child or prevent the parent from consistently and effectively providing safe and stable care and supervision of the child.

Tenn. Code Ann. § 36-1-113(i)(1). "All factors considered by the court to be applicable to a particular case must be identified and supported by specific findings of fact in the court's written order." *Id.* § 36-1-113(i)(3).

The list of factors is not exhaustive, and the statute does not require the trial court to find the existence of every factor before concluding that termination is in the best interest of the child. *See Carrington H.*, 483 S.W.3d at 523; *Audrey S.*, 182 S.W.3d at 878 ("The relevancy and weight to be given each factor depends on the unique facts of each case."). The best interest of a child must be determined from the child's perspective rather than that of the parent. *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004). The statute further provides that "[w]hen considering the factors set forth in subdivision (i)(1), the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." Tenn. Code Ann. § 36-1-113(g)(i)(2).

In this case, the trial court found the following factors applicable: Tennessee Code

16

Annotated sections 36-1-113(i)(1)(A), (B), (C), (D), (E), (F), (H), (I), (J), (K), (L), (M), (O), (P), (Q), (R), and (S). We begin by examining the factors relevant to the Children's emotional needs. *See id.* §§ 36-1-113(i)(A), (B), (D), (E), (F), (H), and (I). The trial court addressed the importance of permanence and stability noting that Appellees have provided the Children with suitable care to address their disabilities. The trial court further noted that "[t]o remove the children from the [Appellees] and place them with Mother, whom the [c]ourt would note has never successfully provided care for the children, would be detrimental to the [C]hildren's emotional, psychological and medical needs." The record established that neither Appellant had developed a healthy or secure parental relationship with the Children in order to provide the appropriate structure that children need. Appellants testified that they have not had any visitation with ZRR since her removal in February of 2019. Although Appellants did exercise some visitation with ZBR prior to their incarceration, the trial court found that such visitation was nominal at best. The trial court emphasized that the Children have developed a healthy and strong attachment to Appellees, and Appellees have maintained contact with the Children's half-sister.

We next consider the factors related to whether Appellants can meet the Children's needs. *See id.* §§ 36-1-113(i)(1)(C), (J), (K), (L), (M), (O), (P), (Q), (R), and (S). The trial court found that "Appellants have failed to prove that they have ever met the Children's basic material, educational, housing and safety needs." According to the testimony presented at trial, "[n]either [Appellant has] sought custody of the [C]hildren since removal, and neither have shown that they are able to provide safe and suitable housing, and care for the disabilities, for the children." The trial court emphasized that Appellants had not demonstrated an understanding of the Children's medical needs and were not in a position to address those needs should the Children be returned. While the trial court commended Appellants for completing various certificate programs during their incarceration, the trial court explicitly noted that the Appellants did not obtain "any training on how to care for the [C]hildren or their disabilities."

After considering the relevant statutory factors and assessing their weight, the trial court determined that Appellees had proven by clear and convincing evidence that it was in the best interest of the Children for Appellants' parental rights to be terminated. Upon our own review of the record, we conclude that the trial court properly weighed the relevant factors and found clear and convincing evidence that termination is in the Children's best interest. *See Carrington H.*, 483 S.W.3d at 539 (finding that termination is proper when the combined weight of the factors demonstrates that termination is in the child's best interest).

We address one additional pending matter. Appellees filed a Motion with this Court for consideration of post-judgment facts pursuant to Tennessee Rule of Appellate Procedure 14. Mother, who was on probation at the time of trial, purportedly failed to follow a probation officer's instructions resulting in incarceration. Mother objected to the Motion on various substantive and procedural grounds. The decision to grant a motion to

consider post-judgment facts is discretionary. *Stacey Fair v. Clarksville Montgomery Cty. Sch. Sys.*, No. M2017-00206-COA-R3-CV, 2017 WL 4773424, at \*2 (Tenn. Ct. App. Oct. 23, 2017) ("The Advisory Committee Comments to Rule 14 indicate that post-judgment facts are appropriate for consideration when they are 'unrelated to the merits[,] [ ] not genuinely disputed, [and] necessary to keep the record up to date.'"). The alleged facts for consideration here do not change the procedural position of the parties or the subject matter of this action. *See* Tenn. R. App. P. 14(a). Accordingly, we deny Appellees' Motion for consideration of post-judgment facts.

## IV.  CONCLUSION

For the foregoing reasons, we reverse the trial court's determination that Appellants abandoned the Children by failure to support or visit. We affirm the remainder of the trial court's judgment. Costs of this appeal are taxed to Appellants, David R. and Tiffany G., for which execution may issue if necessary.

s/Valerie L. Smith
VALERIE L. SMITH, JUDGE

18